**UNITED AIRCRAFT CORPORATION,**
Plaintiff-Appellee,

v.

**CANEL LODGE NO. 700, INTERNA-
TIONAL ASSOCIATION OF MACHIN-
ISTS AND AEROSPACE WORKERS,
AFL-CIO, Defendant-Appellant.**

No. 227, Docket 35119.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1970.

Decided Dec. 11, 1970.

**2**

Plato E. Papps and Mozart G. Ratner, Washington, D. C., for appellant.

Joseph C. Wells, Washington, D. C., for appellee.

Before KAUFMAN, HAYS, and GIBBONS,* Circuit Judges.

GIBBONS, Circuit Judge:

Plaintiff-appellee, United Aircraft Corporation (the Company), petitioned the district court for an order directing the defendant-appellant, Canel Lodge No. 700, International Association of Machinists and Aerospace Workers, AFL-CIO (the Union), to proceed to arbitration pursuant to the terms of a collective bargaining agreement executed between the Company and the Union on December 5, 1968. That agreement contains a comprehensive grievance procedure and lists thirty-nine types of grievances which shall, if not resolved in one of four grievance steps, be submitted to arbitration. Among those grievances which must be submitted to arbitration upon the request of either party is:

"1. A grievance concerning the discharge or disciplinary suspension of an employee."

Also relevant to this case are these additional contract provisions:

"Article IV

Non-Discrimination

The company and the union recognize that employees covered by this agreement may not be discriminated against because of race, color, sex, age, or religious belief, nor because they engage in activities which are protected by the National Labor Relations Act, as amended.

Both the company and the union recognize that employees covered by this agreement have the right to become or remain members of the union or to refuse to become or remain members of the union without being subject to restraint or coercion from either the company or the union because of their exercise of this right.

There shall be no solicitation of employees for union membership or dues conducted upon the premises of the company during working hours by the union, its representatives or by employees.

\*     \*     \*     \*     \*     \*

Appendix A

Section 1. The union shall assume all responsibility for the distribution and collection of payroll deduction assignment cards for union dues and the initiation fee, and agrees that such distribution and collection will not be carried on during working hours on company premises."

The contract provides for dues check off from the pay of those union members who have executed payroll assignment cards. It expressly recognizes that the grievance and arbitration procedures are available to employees, to the Union, and to the Company.

An employee, Tobin, a Union shop steward, was suspended by the Company for one day on December 30, 1969, as a disciplinary punishment for his alleged violation on December 15, 1969, of Company rules which limited employees' rights to distribute or collect payroll assignment cards for dues check off. Neither the employee nor the Union made any attempt to bring this suspension into the grievance procedure. Instead, after the time had expired within which under the contract the employee could ap-

---

* Of the United States Court of Appeals for the Third Circuit, sitting by designation.

peal his suspension through the grievance procedure, the Union filed a charge with the National Labor Relations Board (the Board). This charge alleged that Tobin's disciplinary suspension was a pretext, an interference with rights guaranteed in Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1964), and a violation of Section 8(a) (1), (3) and (5) of the Act.

When it learned of the unfair labor practice charge the Company filed a grievance concerning Tobin's suspension, contending that it was for violating the rule against working hours solicitation of assignment cards. The Union declined to discuss the grievance and refused to participate in contract arbitration. It contended that because the General Counsel of the Board issued a complaint after investigation of its unfair labor practice charge, the contract arbitration procedure was inapplicable. The Company then filed the instant petition under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1964), seeking an order directing the Union to proceed to arbitration. The district court entered such an order on June 24, 1970, from which order the Union appeals.

While this action was pending in the district court, the Company moved before the Board Trial Examiner to stay the Board proceedings, pending disposition of the lawsuit. The Trial Examiner granted the motion. The General Counsel and the Union then filed a special appeal to the Board, which on June 3, 1970, reversed the Trial Examiner and directed him to proceed with a decision on the merits of the unfair labor practice charge. Thus at this juncture the dispute over Tobin's suspension is being litigated before the Board and, pursuant to the district court order, by contract arbitration.

■■ The Union's chief contention is that the dispute over Tobin's suspension does not fall within the arbitration provisions of the contract. The district court found that the Company had presented a grievance cognizable under those provisions, and we agree. The Union argues that the dispute is over Tobin's disciplinary suspension, not over Tobin's alleged breach of the Company's rule and his alleged breach of the no solicitation clause in the contract. Only by a completely strained reading of the contract and a completely unrealistic definition of the dispute could the Court arrive at such a conclusion. Our duty is to order arbitration where under any reasonable construction the contract would cover the grievance, not to strain for unreasonable constructions. International Union of Electrical, Radio and Mach. Workers, AFL–CIO Workers v. General Electric Co., 407 F.2d 253, 256 (2 Cir. 1968).

■ Next the Union contends that if the agreement, properly interpreted, makes subject to arbitration alleged Company conduct which would be an unfair labor practice, such an agreement is unenforceable as against public policy, because it permits the arbitrator to invade the province of the Board. That contention has long since been foreclosed. N. L. R. B. v. Strong, 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); N. L. R. B. v. C. & C. Plywood Corp., 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967); Carey v. Westinghouse Electric Corp., 375 U.S. 261, 268, 84 S.Ct. 401, 11 L.Ed. 2d 320 (1964); Smith v. Evening News Ass'n, 371 U.S. 195, 197–198, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 101 n. 9, 92 S.Ct. 571, 7 L.Ed.2d 593 (1962). In the words of the Supreme Court, " * * * the authority of the Board and the law of the contracts are overlapping, concurrent regimes, neither pre-empting the other." N. L. R. B. v. Strong, *supra*, 393 U.S. at 360, 89 S.Ct. at 544.

■ Indeed upon occasion the Board in exercising its concurrent statutory jurisdiction will defer to an arbi-

trator's award upholding discipline against employees, rather than adjudicating the employee's 8(a) (3) charge on the merits. See, e. g., Spielberg Mfg. Co., 112 N.L.R.B. 1080 (1955) and discussion in Office and Professional Employees International Union, Local 425, AFL–CIO v. N. L. R. B., 136 U.S.App. D.C. 12, 419 F.2d 314, 317–320 (1969). The possibility of such deferral by the Board is the basis for the Union's final contention, that the existence of concurrent jurisdiction coupled with the possibility of deferral by the Board, may in some cases deprive the Union of any advantage which might be gained by its choice of a forum. It is clear that an employer may not resist contract arbitration on the ground that it prefers the Board as a forum. Carey v. Westinghouse Electric Corp., *supra*, 375 U.S. at 268, 84 S.Ct. 401; Smith v. Evening News Ass'n, *supra*. We perceive no compelling reason why a Union which has executed an arbitration agreement should be in a more favorable forum shopping position. The Union argues that the district court has exacted a price for its resort to the processes of the National Labor Relations Act before the Board, in that it is being forced simultaneously to arbitrate. This argument is specious, for the court had nothing to do with the execution of the collective bargaining agreement in which the Union undertook to arbitrate. Where there is such an agreement there is concurrent contract and Board jurisdiction.

This case does not present as issues when or to what extent the Board should defer to an arbitrator's decision, nor does it present as an issue when the Board should postpone its own proceeding until the conclusion of contract arbitration. See Dubo Mfg. Co., 142 N.L.R.B. 431 (1963). It presents only the propriety of the district court's order enforcing an arbitration agreement at a time when a dispute arising out of the same facts is pending before the Board. That order was proper, and it will be affirmed.