**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-50212
Summary Calendar

W. BLAKE SMITH, JR.; and PATTI FAIN SMITH,

Plaintiffs-Appellees,

versus

JEAN S. SMITH,

Defendant-Appellant.

Appeal from United States District Court
for the Western District of Texas
(USDC No. W-94-CV-366)

September 2, 1999

Before KING, Chief Judge, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM::[*]

Defendant Jean Smith appeals the district court's order denying her motion for release from confinement from civil contempt. Because the defendant cannot demonstrate an abuse of discretion by the district court, we affirm.

### Factual & Procedural Background

On July 26, 1996, Judge Walter S. Smith, Jr. of the Western District of Texas ordered that the defendant be held in both civil and criminal contempt for failing to attend a post-judgment

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

deposition.[1]  We released the defendant pending her appeal of the district court's order, but she was taken back into custody in April 1998 after we reversed the criminal contempt order and affirmed the civil contempt order.  The defendant remains in custody today.

On May 1, 1998, the district court granted plaintiffs W. Blake Smith, Jr. and Patti Fain Smith's petition for a writ of habeas corpus ad testificandum, thereby ordering the defendant to appear on May 4, be deposed, and to produce documents.  After her deposition, the plaintiffs filed a motion to compel answers which the defendant had refused to answer at her deposition.  The district court granted this motion on July 31.

On November 19, 1998, the defendant filed with the district court a second motion to release from confinement.[2]  After the district court denied this motion on January 28, 1999, the defendant filed a notice of appeal of this motion on January 28, 1999.  This appeal followed.

**Standard of Review**

We review contempt orders for an abuse of discretion.  See F.D.I.C. v. LeGrand, 43 F.3d 163 (5th Cir. 1995).  Furthermore, the district court's factual findings underlying the contempt order are

---

[1]Although not necessarily relevant to the issue presented today, it may be helpful to understand the factual context surrounding the present dispute.  On December 7, 1995, a jury returned a verdict in favor of the plaintiffs in this case and against several defendants, including defendant Jean Smith, for compensatory and punitive damages.  On May 30, 1996, the plaintiffs filed a successful motion to compel the testimony of Jean Smith, both as an individual and as a trustee, and for the production certain documents.  The defendant did not appear, however, and the plaintiffs filed a motion for contempt on June 24, 1996.  In her July 6, 1996 response, the defendant explained that she did not attend the deposition because, she argued, an automatic stay had been entered as a result of filing for personal bankruptcy on June 19, 1996.  After a contempt hearing, the court found that it could hold the defendant in contempt and did so. Relying principally upon In re Spagat, 4 F.Supp. 926 (S.D.N.Y. 1933), the court noted that a personal bankruptcy action filed after the court order compelling her testimony and before the scheduled deposition did not stay the deposition.  Moreover, the court observed that the order compelling her testimony was directed at the defendant's personal and representative capacity, and that even if the automatic stay was effective, it would not excuse her absence in her representative capacity as trustee.

[2]This was the last of several unsuccessful motions filed by the defendant in an effort to win her release.  The first motion to release from confinement was filed on May 8, 1998, and denied on July 31, 1998.  Defendant also filed an application for a writ of habeas corpus on July 2, 1998, but the application was denied by the district court on January 13, 1999. Finally, the defendant on September 24, 1998 filed a response to the court's July 31 order, and the district court, construing it as a motion for reconsideration, denied it on October 30, 1998.

reviewed through the lens of the clearly erroneous standard. See id. As the parties observe, the same standard applies when determining whether a party has complied with a contempt order.

**Discussion**

The defendant argues that the district court abused its discretion in refusing to order her release because, she claims, she has done all she can to purge herself of the contempt order. Specifically, the defendant claims that to satisfy the contempt order she is required to meet two conditions: first, to appear and answer questions at a deposition; and second, to produce certain records. As to the first condition, the defendant claims she has satisfied this requirement because she appeared at the court ordered deposition on May 4, 1998, at which she answered questions, and responded to the court's July 31, 1998 order compelling her to answer questions left unanswered after the May 4 deposition.[3]

As to the second condition, the defendant alleges that she cannot produce the records because they were stolen. She further submits that she has attempted to make the records available to the plaintiffs by providing to plaintiffs releases and authorizations which would permit them to obtain the requested documents. Accordingly, the defendant submits that she should not remain in custody because she is unable to satisfy the second prong. and partially satisfied it to the best of her ability.

It is well settled that a respondent to a contempt order "can defend against it by showing a present inability to comply with the subpoena or order." Petroleos Mexicanos v. Crawford Enterprises, 826 F.2d 392, 401 (5th Cir. 1987) (citing United States v. Rylander, 460 U.S. 752, 756 (1983)). It is equally well settled, however, that "in raising this defense, the defendant has the burden of production." Rylander, 460 U.S. at 756. "To successfully establish a defense, the [defendant] must 'plainly and unmistakably' manifest the correctness of [her] cause." Hodgson v. Hotard, 436 F.2d

---

[3]Plaintiffs hotly contest this argument, and respond that she has refused to answer the questions fully, completely, and honestly. Specifically, plaintiffs allege that her answers are patently deficient (for example, in her deposition the defendant responded to questions with phrases similar to "I don't know" more than a hundred times), vague, and evasive. Because we find that the defendant cannot carry her burden with respect to the records, we decline to confront this issue.

3

1110, 1114 (5th Cir. 1971) (dealing with civil contempt orders in the context of the Fair Labor Standards Act).[4]

In this case, the defendant cannot carry her burden of production. Even putting aside the district court's factual finding in its July 31, 1998 order that the defendant's "claim that the documents were stolen is wholly incredulous," defendant has not explained why she cannot obtain the documents from secondary sources. Her response to the contrary, that she has provided the plaintiffs with the means to do so, entirely misses the mark. The *defendant* is "under a duty to make in good faith all reasonable efforts to comply" with the civil contempt order," and her efforts to shift that responsibility to the plaintiffs does not excuse her from discharging her own duty. See United States v. Rizzo, 539 F.2d 458, 465 (5th Cir. 1976). As the district court observed in its July 31, 1998 order, the defendant is under a legal duty to obtain the documents requested from secondary sources. Under this rationale, the district court certainly did not abuse its discretion in denying her motion to release the defendant from confinement.

### Conclusion

Those in custody for civil contempt, like the defendant, "carry the keys of their prison in their own pockets." Smith v. Sullivan, 611 F.2d 1050, 1053 (5th Cir. 1980) (quoting In re Nevitt, 117 F. 448, 461 (8th Cir. 1902)). Until the defendant chooses to use her key, those prison doors will remain locked. We AFFIRM.

---

[4]The "plain and unmistakable" standard is identical to the usual civil preponderance standard. See Securities & Exchange Commission v. Huffman, 996 F.2d 800, 803 (5th Cir. 1993).