**GENERAL TELEPHONE COMPANY OF FLORIDA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 20866.

United States Court of Appeals Fifth Circuit.

Oct. 2, 1964.

William Terrell Hodges, Hugh C. MacFarlane and MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Asso. Gen. Counsel, Stephen B. Goldberg, Atty., Washington, D. C., Arnold Ordman, General Counsel, Joseph C. Thackery, Attorney, N. L. R. B., for respondent.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and McRAE, District Judge.

McRAE, District Judge.

This case is before the Court upon petition of General Telephone Company of Florida ("the Company") to review and set aside a Decision and Order of the National Labor Relations Board ("the Board") and upon the answer and request for enforcement filed by the Board.

On April 11, 1962, System Council T-2, International Brotherhood of Electrical Workers, AFL-CIO ("the Union") filed

an unfair labor practice charge with the Regional Office of the Board in Tampa, Florida, alleging that the Company, along with its predecessor company, engaged in an unfair labor practice in violation of Sections 8(a) (1) and (5) of the National Labor Relations Act ("the Act"), by discontinuing the payment of a "Christmas bonus" to its employees without collectively bargaining with reference thereto.[1]

The Board filed a Complaint against the Company, alleging that the Company in 1961 unilaterally discontinued payment of "Christmas checks" to its employees in the amount of $10.00 for each employee, which were existing benefits, and that the Company had refused to bargain collectively with reference to such payments.

The Company, in its Answer, denied any unfair labor practice.

In due course, a hearing was held before a Trial Examiner who found that even if the Company violated Section 8(a) (5) of the Act by unilaterally terminating the payment of Christmas checks in 1961 and 1962, the Union was estopped to challenge this unilateral action by the Company. The Trial Examiner further found it unnecessary to decide whether the Christmas checks were "gifts" as distinguished from "bonuses", but nevertheless added that the evidence tended to show that these Christmas checks were "bona fide" gifts. Since there was no independent allegation concerning a violation of Section 8(a) (1) of the Act, the Trial Examiner recommended that the Complaint be dismissed in its entirety.

Upon review, the Board approved and adopted the Trial Examiner's Findings of Fact, but disagreed with his Conclusion of Law that the Union was estopped to challenge the Company's action, and further concluded that the Christmas checks paid by the Company to its employees were "bonuses" or wages and not gifts. The Board, by its Decision and Order, accordingly found that the Company had violated Section 8(a) (1) and (5) of the Act by unilaterally discontinuing payment of Christmas checks to its employees without bargaining collectively; ordered the Company to cease and desist from refusing or failing to bargain collectively with the Union concerning the payment of the disputed Christmas checks; and ordered the Company to pay Christmas checks to its employees for the years 1961 and 1962.

The Company in effect contends that the Board erred in three basic respects: (a) in concluding that the Christmas checks were wages and not gifts; (b) in overruling the Trial Examiner's conclusion that the Union was estopped to complain of the unilateral discontinuance of the payment of the Christmas checks; and (c) in ordering the Company to pay Christmas checks to its employees for the years 1961 and 1962.

The Company is willing, upon request of the Union, to bargain with reference to payment of future Christmas checks, and this point is accordingly not an issue in the case. The contentions of the Company, as set forth above, therefore raise the only issues to be decided in this case.

The Company began issuing Christmas checks in 1925 in the amount of $5.00 for each employee. Such checks were continued (except for the depression years 1932–1935) through 1945. At that time they were increased to $10.00 for each employee for the years 1946–1960. In 1961 the Company decided not to issue Christmas checks, and this decision gave rise to the present case.

Since 1938, the employee pay vouchers prepared by the Company clas-

---

1. 29 U.S.C. § 158 provides:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title: * * *

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

sified the annual Christmas checks as taxable income. On July 11, 1961, while the contract negotiations were in progress, the Company mailed to each employee a "Special Bulletin" listing all of the employees' fringe benefits, and captioned "THIS IS YOUR EXTRA PAY-CHECK". This flyer pointed out that each employee actually received an "extra 51 cents pay each hour of the workday". Among the categories listed was " * * * (3) Voluntary Employee Benefit Payments, such as Pensions, Group Life Insurance, Commissions, *Christmas Checks*, Group Hospitalization and Surgical Insurance". (Emphasis added.) These circumstances, when the record is considered as a whole, afford substantial evidence in support of the conclusion of the Board that the Christmas checks were so tied to the remuneration which the employees received for their work that they were in reality wages. N. L. R. B. v. Electric Steam Radiator Corp., 321 F.2d 733, 737 (6th Cir. 1963). The payments had been made by the Company over a long period of time, and the Board properly found that they were bonuses not economically different from other special kinds of remuneration, such as pensions, retirement plans or group insurance. N. L. R. B. v. Niles-Bement-Pond Co., 199 F.2d 713, 714–715 (2d Cir. 1952). The Board's conclusion that the Christmas checks in this case constituted wages and not gifts is accordingly affirmed.

■ The Company unilaterally made the decision each year concerning the Christmas check payments, and the Union took no action relative to these payments at any time until the discontinuance of the payments in 1961. Since the time when the Union first started representing the Company's employees in 1941, up until 1961, the Company had continually followed a uniform practice of issuing the Christmas checks each year. The only change in this practice during the twenty year period was in 1946 when the Company doubled the amount of each check. Under such circumstances, the Company could not reasonably regard the Union's inaction as acquiescence on the Union's part to any unilateral action which the Company might wish to take with reference to the Christmas checks. There was accordingly no conduct on the part of the Union, upon which the Company might rightfully rely, which would create an estoppel against the Union. The fact that the Union's proposed contract and the contract actually signed in the fall of 1961 did not contain an "existing benefits" clause does not necessarily show that the Union meant to forego any right to the Christmas checks or that the Company could reasonably have so interpreted it. In the contract negotiations, little or no reference was made to Christmas checks, and the Board properly found on the evidence before it that the Union was not estopped by its contract negotiations. The Board's decision in Tucker Steel Corp., 134 N.L.R.B. 323 (1961), the principal authority relied upon by the Company for finding an estoppel in this case, is based upon a factual situation that differs materially from the present case. Accordingly, the decision of the Board that the Union was not estopped to assert this claim is affirmed.

■ Although the Board correctly found that the Company violated Sections 8(a) (1) and (5) of the Act by discontinuing the Christmas checks without first bargaining with the Union, it is the opinion of the Court that the Board erred in directing the Company to pay its employees the $10.00 Christmas checks for the years 1961 and 1962. As in N. L. R. B. v. Citizens Hotel Co., 326 F.2d 501 (5th Cir. 1964), the violation in the present case did not involve deliberate, purposeful refusal to engage in negotiations such as would violate Section 8(a) (3) of the Act, nor was such a violation alleged. On the other hand, the unilateral change was only a failure to discuss this single question with the Union before action was taken by the Company. The record shows no other failure or refusal of the Company to bargain with the Union. The Decision and Order, as enforced by the present decision, will effectively insure to the Union the full enjoyment of its rights to bargain collectively

with the Company for future payment of Christmas checks, and likewise for payment of the Christmas checks for the years 1961 and 1962.

The Order and Decision of the Board is overruled and not enforced insofar as it directs payment of the Christmas checks, with interest, for the years 1961 and 1962, and insofar as it may imply an existing obligation to pay Christmas checks for any subsequent years. As so modified, the Order of the Board is hereby enforced.