488 F.2d 457
 84 L.R.R.M. (BNA) 2794, 72 Lab.Cas. P 14,086
 RADIO TELEVISION TECHNICAL SCHOOL, INC., t/a Ryder Technical
Institute, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Local 773, International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, Intervenor.
 No. 73-1127.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 10, 1973.
Decided Nov. 16, 1973.
 
 James L. Price, Steinberg, Greenstein, Richman & Price, Philadelphia, Pa., for petitioner.
 Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Acting Asst. Gen. Counsel, N. L. R. B., Robert A. Giannasi, Jonathan G. Axelrod, Washington, D. C., for respondent.
 Richard H. Markowitz, Stephen C. Richman, Markowitz & Kirschner, Philadelphia, Pa., for intervenor.
 Before McLAUGHLIN, VAN DUSEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 McLAUGHLIN, Circuit Judge.
 
 
 1
 Petitioner, Radio Television Technical School, Inc., t/a Ryder Technical Institute, appeals from the October 10, 1972 order of the National Labor Relations Board which found that petitioner committed an unfair labor practice in violation of Section 8(a)(5) and (1) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. Sec. 151 et seq.), herein called the Act. The Board has filed a cross-application for enforcement of its order and Local 773, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, herein called the Union, has been granted the right to intervene. We affirm the order of the Board.
 
 
 2
 Since 1950 petitioner has been presenting gifts to its employees at Christmas time. Initially, the gifts consisted of such items as sport jackets, wallets, trays, hams, turkeys, etc. In 1965 or 1966 (the precise year was not established in the proceedings below), petitioner began making money payments. At Christmas time in 1970, petitioner withheld making payments to the employees who had joined the Union in the summer of 1970.[1] However, all non-union employees received their Christmas payments.
 
 
 3
 The matter was submitted to arbitration and the arbitrator found that the payments were made at the discretion of petitioner and therefore legally could be discontinued without subjecting the matter to the collective bargaining process. Since petitioner refused to bargain over the matter, the Union also filed with the Board an unfair labor practice charge against petitioner. Following the outcome of the arbitration proceeding, the Board vacated the arbitrator's decision and ordered petitioner to make the 1970 and 1971 Christmas payments to the union employees.
 
 
 4
 The collective bargaining agreement between petitioner and the Union became operative on October 1, 1970. The agreement did not provide specifically for any Christmas payments, Christmas bonuses, or Christmas gifts. The absence of such a provision was the alleged justification for petitioner's decision to discontinue the payments. The Union, however, has taken the position that the Christmas payments were wages, and as such, could not be altered in view of the existence of the Maintenance of Standards provision[2] of the collective bargaining agreement.
 
 
 5
 A labor managment dispute involving the status and/or payment of a Christmas bonus is not novel. In 1952, the Second Circuit reviewed an order of the National Labor Relations Board which held that a Christmas bonus was a part of wages and therefore required bargaining pursuant to Section 9(a) of the Act. In affirming the Board's order, the Court held: "It does, of course, merely beg the question to call them [Christmas bonuses] 'gifts' and to argue, however persuasively, that gifts per se are not a required subject for collective bargaining. But if these gifts were so tied to the remuneration which employees received for their work that they were in fact a part of it, they were in reality wages and so within the statute * * * Where, as here, the socalled gifts have been made over a substantial period of time and in amount have been based on the respective wages earned by the recipients, the Board was free to treat them as bonuses not economically different from other special kinds of remuneration like pensions, retirement plans or group insurance, to name but a few, which have been held within the scope of the statutory bargaining requirement." N.L.R.B. v. Niles-Bement-Pond Co., 199 F.2d 713, 714 (2d Cir. 1952). Accord, N.L.R.B. v. Wheeling Pipe Line, 229 F.2d 391 (8th Cir. 1956); N.L.R.B. v. Electric Steam Radiator Corporation, 321 F.2d 733 (6th Cir. 1963); N.L.R.B. v. Citizens Hotel Company, 326 F.2d 501 (5th Cir. 1964); N.L.R.B. v. United States Air Conditioning Corporation, 336 F.2d 275 (6th Cir. 1964).
 
 
 6
 Although each of the foregoing cases has held that a Christmas bonus is a wage, the particular facts of each case shall be determinative of whether a Christmas bonus is a wage or a gift. In making such a determination, the following factors shall be considered by the trier of fact: (1) the consistency or regularity of the payments; (2) the uniformity in the amount of the payments; (3) the relationship between the amount of the bonus and the remuneration of the recipient; (4) the taxability of the payment as income; and (5) the financial condition and ability of the employer. See, e. g. N.L.R.B. v. Wonder State Manufacturing Company, 344 F.2d 210, 214 (8th Cir. 1965).
 
 
 7
 The record before us reveals that Christmas bonuses were given consistently and regularly since 1950 and for at least four years prior to the execution of the 1970 collective bargaining agreement, all employees received cash payments at Christmas time. Notwithstanding petitioner's assertions and allegations to the contrary, the Board found that petitioner adhered to an established pattern or formula in calculating its Christmas payments to instructors and laboratory assistants at the Allentown institution. Although the record does not convince us that a precise mathematical formula had evolved, there is substantial evidence to show that petitioner's payments constituted a pattern to the extent that they were based upon the employees' length of service and the nature and scope of their employment responsibilities. Furthermore, the Board's decision is strengthened by the fact that the Christmas payments were admittedly based on such employment-related considerations as supervisory recommendations, work performance, work attitudes and longevity and the fact that petitioner subjected payments in excess of $25.00 to withholding and social security taxes.[3] In light of these findings, petitioner's argument that its Christmas payments were unrelated to the employees' work, and thus not "wages" under Section 8(d) of the Act, must fail.[4] Since these payments were in fact "wages", petitioner was under a statutory duty to submit the matter to the collective bargaining process. Petitioner's failure to do so constituted an unfair labor practice in violation of Section 8(a)(5) and (1) of the Act. N.L.R.B. v. Katz, 369 U.S. 736, 737, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); Leeds & Northrup Company v. N.L.R.B., 391 F.2d 874, 877 (3d Cir. 1968).
 
 
 8
 Petitioner further alleges that the Board committed error by refusing to defer to the decision of the arbitrator. We cannot agree with this assertion. Although it is the well established policy of the Board to encourage settlement of labor-management disputes through the machinery of arbitration, the Board is not duty bound to defer to every decision of an arbitrator. Spielberg Manufacturing Company, 112 N.L. R.B. 1080 (1955); Flintkote Co., 149 N.L.R.B. 1561 (1964). However, the Board's deferral policy is strictly voluntary. N.L.R.B. v. Acme Industrial Co., 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); Carey v. Westinghouse Electrical Corp., 375 U.S. 261, 270-272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1963); N.L.R.B. v. Plasterers' Local Union No. 79, 404 U.S. 116, 137, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971). The Board has heretofore set aside those arbitration awards where it clearly has appeared that "the arbitration proceedings were tainted by fraud, collusion, unfairness, or serious procedural irregularities or that the award was clearly repugnant to the purposes and policies of the Act." International Harvester Company, 138 N.L.R.B. 923, 927 (1962), aff'd sub nom. Ramsey v. N.L.R.B., 327 F.2d 784, 788 (7th Cir. 1964), cert. denied 377 U.S. 1003, 84 S.Ct. 1938, 12 L. Ed.2d 1052 (1964); Collyer Insulated Wire, 192 N.L.R.B. 837, 839-843 (1971); Spielberg Manufacturing Company, supra at 1082.
 
 
 9
 In the case before us, the arbitrator found that petitioner's Christmas payments were voluntary gifts and as such could be unilaterally discontinued in its sole discretion. Since this finding clearly ignored a long line of Board and court precedent declaring Christmas bonuses to be an element of wages and therefore subject to collective bargaining, the Board's independent inquiry into and refusal to follow the arbitration award was proper. International Harvester Company, supra; Collyer Insulated Wire, supra; Spielberg Manufacturing Company, supra. And, where the Board disagrees with the decision of the arbitrator, "the Board's ruling would, of course, take precedence * * *." Carey v. Westinghouse Electric Corp., supra, 375 U.S. at 272, 84 S. Ct. at 409.
 
 
 10
 Finally, petitioner contends that the Union waived its right to the 1971 Christmas bonus because of its failure to press for this item during the 1971 contract negotiations. However. a waiver cannot be lightly inferred. It clearly and unmistakably must be established before it can be relied upon as a bar to recovery. N.L.R.B. v. Wisconsin Aluminum Foundry Co., Inc., 440 F.2d 393, 399 (7th Cir. 1971); Timken Roller Bearing Co. v. N.L.R.B., 325 F.2d 746, 751 (6th Cir. 1963), cert. denied 376 U. S. 971, 84 S.Ct. 1135, 12 L.Ed.2d 85 (1964); N.L.R.B. v. Perkins Machine Co., 326 F.2d 488, 489 (1st Cir. 1964); Proctor Manufacturing Corporation, 131 N.L.R.B. 1166, 1169 (1961). The record contains no substantial evidence in support of petitioner's claim that the Union clearly and unmistakably waived its right to the 1971 Christmas bonus. Rather, it reasonably can be inferred therefrom that since the 1970 Christmas bonus issue had not been finally adjudicated when the 1971 negotiations commenced, the parties mutually recognized the probable futility of discussing the matter any further and tacitly agreed that the ultimate resolution would control the payment or non-payment of the 1971 Christmas bonus.
 
 
 11
 For the reasons set forth above, the October 10, 1972 order of the Board shall be enforced.
 
 
 
 [1]
 It should be noted that although petitioner operates three (3) educational institutions located in New Jersey and Pennsylvania, laboratory assistants and instructors at the Allentown, Pennsylvania facility are the only employees of petitioner who are subject to the provisions of a collective bargaining agreement
 
 
 [2]
 Article IV, entitled Maintenance of Standards, reads as follows:
 "a) Protection of Conditions
 "The EMPLOYER agrees that all conditions of employment relating to wages, hours of work, and overtime differentials shall be maintained at not less than the highest standards in effect at the time of the signing of this agreement and the conditions of employment shall be improved wherever specific provisions for improvement are made else where in this agreement * * *
 "This provision does not give the EMPLOYER the right to impose or continue wages, hours and working conditions less than those herein contained in this agreement."
 
 
 [3]
 Under Internal Revenue Code, "Gross income does not include the value of property acquired by gift * * *" 26 U.S.C. Sec. 102. Thus an employer must withhold income tax and social security taxes only from "wages for employment performed for the employer by the employee," 26 C.F.R. Secs. 31.3102-1, 31.3401(a)-1 (1973). Accord, General Telephone Co. of Florida v. N. L. R. B., 337 F.2d 452, 454 (5th Cir. 1964)
 
 
 [4]
 Petitioner's financial condition and ability are not factors in this litigation. Petitioner did not present an economic defense for its discontinuation of the Christmas bonuses, and could hardly do so while continuing to pay bonuses to all non-union employees