## CAREY, PRESIDENT OF THE INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS, AFL–CIO, *v.* WESTINGHOUSE ELECTRIC CORP.

No. 21.   Argued December 11–12, 1963.—Decided January 6, 1964.

Benjamin C. Sigal argued the cause for petitioner. With him on the briefs were *David S. Davidson* and *Isadore Katz.*

*John F. Hunt, Jr.* argued the cause for respondent. With him on the brief was *James F. Smith.*

*Solicitor General Cox,* by special leave of Court, argued the cause for the United States, as *amicus curiae,* urging reversal. With him on the brief were *Arnold Ordman, Dominick L. Manoli* and *Norton J. Come.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The petitioner union (IUE) and respondent employer (Westinghouse) entered into a collective bargaining agreement covering workers at several plants including one where the present dispute occurred. The agreement states that Westinghouse recognizes IUE and its locals as exclusive bargaining representatives for each of those units for which IUE or its locals have been certified by the National Labor Relations Board as the exclusive bargaining representative; and the agreement lists among those units for which IUE has been certified a unit of "all production and maintenance employees" at the plant where the controversy arose, "but excluding all salaried technical . . . employees." The agreement also contains a grievance procedure for the use of arbitration in case of unresolved disputes, including those involving the "interpretation, application or claimed violation" of the agreement.

IUE filed a grievance asserting that certain employees in the engineering laboratory at the plant in question, represented by another union, Federation, which had been certified as the exclusive bargaining representative for a unit of "all salaried, technical" employees, excluding "all production and maintenance" employees, were performing production and maintenance work. Westinghouse refused to arbitrate on the ground that the controversy presented a representation matter for the National Labor

Relations Board. IUE petitioned the Supreme Court of New York for an order compelling arbitration. That court refused. The Appellate Division affirmed, one judge dissenting, 15 App. Div. 2d 7, 221 N. Y. S. 2d 303. The Court of Appeals affirmed, one judge dissenting, holding that the matter was within the exclusive jurisdiction of the Board since it involved a definition of bargaining units. 11 N. Y. 2d 452, 230 N. Y. S. 2d 703. The case is here on certiorari. 372 U. S. 957.

We have here a so-called "jurisdictional" dispute involving two unions and the employer. But the term "jurisdictional" is not a word of a single meaning. In the setting of the present case this "jurisdictional" dispute could be one of two different, though related, species: either—(1) a controversy as to whether certain work should be performed by workers in one bargaining unit or those in another; or (2) a controversy as to which union should represent the employees doing particular work. If this controversy is considered to be the former, the National Labor Relations Act (61 Stat. 136, 73 Stat. 519, 29 U. S. C. § 151 *et seq.*) does not purport to cover all phases and stages of it. While § 8 (b) (4) (D) makes it an unfair labor practice for a union to strike to get an employer to assign work to a particular group of employees rather than to another,[1] the Act does not deal with the controversy anterior to a strike nor provide any machinery for resolving such a dispute absent a strike. The Act and its remedies for "jurisdictional" controversies of that nature come into play only by a strike or a threat of a

---

[1] § 8 (b) (4) (D):

"It shall be an unfair labor practice for a labor organization or its agents—

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or other-

strike. Such conduct gives the Board authority under § 10 (k) to resolve the dispute.[2]

Are we to assume that the regulatory scheme contains a hiatus, allowing no recourse to arbitration over work assignments between two unions but forcing the controversy into the strike stage before a remedy before the Board is available? The Board, as admonished by § 10 (k),[3] has often given effect to private agreements to settle disputes of this character;[4] and that is in accord

wise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

.        .        .        .        .

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work." 29 U. S. C. (Supp. IV) § 158 (b) (4) (D).

[2] Section 10 (k) provides:
"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 8 (b), the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed." 29 U. S. C. § 160 (k).

[3] Section 10 (k), *supra,* note 2, provides that the Board shall determine the dispute, ". . . unless . . . the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute."

[4] See *United Brotherhood of Carpenters,* 96 N. L. R. B. 1045; *Wood, Wire & Metal Lathers Union,* 119 N. L. R. B. 1345; *Millwrights Local 1102,* 121 N. L. R. B. 101, 106–107; *Ironworkers Local No. 708,* 137 N. L. R. B. 1753, 1757. Section 201 of the Labor Man-

with the purpose as stated even by the minority spokesman in Congress [5]—"that full opportunity is given the parties to reach a voluntary accommodation without governmental intervention if they so desire." 93 Cong. Rec. 4035; 2 Leg. Hist. L. M. R. A. (1947) 1046. And see *Labor Board* v. *Radio Engineers,* 364 U. S. 573, 577.

As Judge Fuld, dissenting below, said: "The underlying objective of the national labor laws is to promote collective bargaining agreements and to help give substance to such agreements through the arbitration process." 11 N. Y. 2d 452, 458, 230 N. Y. S. 2d 703, 706.

Grievance arbitration is one method of settling disputes over work assignments; and it is commonly used, we are told. To be sure, only one of the two unions involved in the controversy has moved the state courts to compel arbitration. So unless the other union intervenes, an adjudication of the arbiter might not put an end to the dispute. Yet the arbitration may as a practical matter end the controversy or put into movement forces that will resolve it. The case in its present posture is analogous to *Whitehouse* v. *Illinois Central R. Co.,* 349 U. S. 366, where a railroad and two unions were disputing a jurisdictional matter, when the National Railroad Adjustment Board served notice on the railroad and one

---

agement Relations Act of 1947 declares the national policy to be the use of governmental facilities for conciliation, mediation, and voluntary arbitration of disputes between employers and employees. 61 Stat. 152, 29 U. S. C. § 171 (b). Section 203 (d) provides:

"Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. The Service is directed to make its conciliation and mediation services available in the settlement of such grievance disputes only as a last resort and in exceptional cases." 61 Stat. 154, 29 U. S. C. § 173 (d).

[5] Senator Murray of Montana. And see S. Rep. No. 105, 80th Cong., 1st Sess., p. 27, 1 Leg. Hist. L. M. R. A. (1947) 433.

union of its assumption of jurisdiction. The railroad, not being able to have notice served on the other union, sued in the courts for relief. We adopted a hands-off policy, saying, "Railroad's resort to the courts has preceded any award, and one may be rendered which could occasion no possible injury to it." *Id.*, at 373.

Since § 10 (k) not only tolerates but actively encourages voluntary settlements of work assignment controversies between unions, we conclude that grievance procedures pursued to arbitration further the policies of the Act.

What we have said so far treats the case as if the grievance involves only a work assignment dispute. If, however, the controversy be a representational one, involving the duty of an employer to bargain collectively with the representative of the employees as provided in § 8 (a)(5),[6] further considerations are necessary. Such a charge, made by a union against the employer, would, if proved, be an unfair labor practice, as § 8 (a)(5) ex-

---

[6] Section 8 (a) (5) provides, "It shall be an unfair labor practice for an employer— . . . to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9 (a)." 29 U. S. C. § 158 (a)(5).

Section 9 (a) provides that the representatives shall be chosen by the majority of employees "in a unit appropriate" for collective bargaining. 29 U. S. C. § 159 (a). Section 9 (b) gives the Board authority to determine what unit is the appropriate one—"the employer unit, craft unit, plant unit, or subdivision thereof." 29 U. S. C. § 159 (b).

Section 9 (c) (1) provides:

"Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

"(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in section 9 (a), or (ii) assert that the individual or labor organization, which has been certified or is

pressly states. Or the unions instead of filing such a charge might petition the Board under § 9 (c)(1) to obtain a clarification of the certificates they already have from the Board; and the employer might do the same.

Thus in *Kennametal, Inc.*, 132 N. L. R. B. 194, a union was certified to represent "production and maintenance employees" excluding, among others, "technical" and "laboratory" employees. It filed a motion for clarification of its certificates, contending that certain employees in the laboratory were "an accretion to the existing certified production and maintenance unit and are not embraced in the classification of laboratory employees excluded from the established unit." *Id.*, at 196–197. The employer contended that the laboratory operation in question was still in the research and development stage. The Board found that some of the employees in question were performing production rather than experimental laboratory work and constituted an accretion to the existing unit; and it clarified the certification by specifically including those employees in the production and maintenance unit. What a union can do, an employer can do, as evidenced by numerous Board decisions. See *Western Cartridge Co.*, 134 N. L. R. B. 67; *Blaw-Knox Co.*, 135

---

being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in section 9 (a); or

"(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in section 9 (a); the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." 29 U. S. C. § 159 (c)(1).

N. L. R. B. 862; *Lumber & Millwork Industry Labor Committee*, 136 N. L. R. B. 1083.

If this is truly a representation case, either IUE or Westinghouse can move to have the certificate clarified. But the existence of a remedy before the Board for an unfair labor practice does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court, as we held in *Smith* v. *Evening News Assn.*, 371 U. S. 195. We think the same policy considerations are applicable here; and that a suit either in the federal courts, as provided by § 301 (a) of the Labor Management Relations Act of 1947 (61 Stat. 156, 29 U. S. C. § 185 (a); *Textile Workers* v. *Lincoln Mills*, 353 U. S. 448), or before such state tribunals as are authorized to act (*Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502; *Teamsters Local* v. *Lucas Flour Co.*, 369 U. S. 95) is proper, even though an alternative remedy before the Board is available, which, if invoked by the employer, will protect him.

The policy considerations behind *Smith* v. *Evening News Assn., supra*, are highlighted here by reason of the blurred line that often exists between work assignment disputes and controversies over which of two or more unions is the appropriate bargaining unit. It may be claimed that A and B, to whom work is assigned as "technical" employees, are in fact "production and maintenance" employees; and if that charge is made and sustained the Board, under the decisions already noted, clarifies the certificate. But IUE may claim that when the work was assigned to A and B, the collective agreement was violated because "production and maintenance" employees, not "technical" employees, were entitled to it. As noted, the Board clarifies certificates where a certified union seeks to represent additional employees; but it will not entertain a motion to clarify a certificate where the union merely seeks additional work for employees already

within its unit. See *General Aniline & Film Corp.*, 89 N. L. R. B. 467; *American Broadcasting Co.*, 112 N. L. R. B. 605; *Employing Plasterers Assn.*, 118 N. L. R. B. 17. The Board's description of the line between the two types of cases is as follows:

". . . a Board certification in a representation proceeding is not a jurisdictional award; it is merely a determination that a majority of the employees in an appropriate unit have selected a particular labor organization as their representative for purposes of collective bargaining. It is true that such certification presupposes a determination that the group of employees involved constitute an appropriate unit for collective bargaining purposes, and that in making such determination the Board considers the general nature of the duties and work tasks of such employees. However, unlike a jurisdictional award, this determination by the Board does not freeze the duties or work tasks of the employees in the unit found appropriate. Thus, the Board's unit finding does not *per se* preclude the employer from adding to, or subtracting from, the employees' work assignments. While that finding may be determined by, it does not determine, job content; nor does it signify approval, in any respect, of any work task claims which the certified union may have made before this Board or elsewhere." *Plumbing Contractors Assn.*, 93 N. L. R. B. 1081, 1087.

As the Board's decisions indicate, disputes are often difficult to classify. In the present case the Solicitor General, who appears *amicus,* believes the controversy is essentially a representational one. So does Westinghouse. IUE on the other hand claims it is a work assignment dispute. Even if it is in form a representation problem, in substance it may involve problems of seniority when layoffs occur (see Sovern, Section 301 and the

Primary Jurisdiction of the NLRB, 76 Harv. L. Rev. 529, 574–575 (1963)) or other aspects of work assignment disputes. If that is true, there is work for the arbiter whatever the Board may decide.

If by the time the dispute reaches the Board, arbitration has already taken place, the Board shows deference to the arbitral award,[7] provided the procedure was

---

[7] See, e. g., *Raley's, Inc.*, 143 N. L. R. B. 256, 258–259:

"In the recently decided International Harvester Company case, a majority of the Board indicated that it would give 'hospitable acceptance to the arbitral process' in order 'to promote industrial peace and stability by encouraging the practice and procedure of collective bargaining.' Relying on various statutory provisions, particularly Section 203(d) of the Labor-Management Relations Act, 1947, and on decisions of the United States Supreme Court which recognize arbitration as 'an instrument of national labor policy for composing contractual differences,' the Board concluded that it would withhold its undoubted authority to adjudicate unfair labor practice charges and give effect to arbitration awards involving the same subject matter 'unless it clearly appears that the arbitration proceedings were tainted by fraud, collusion, or serious procedural irregularities or that the award was clearly repugnant to the purposes and policies of the Act.' While it is true that International Harvester, as well as other cases in which the Board honored arbitration awards, involved unfair labor practice proceedings, we believe that the same considerations which moved the Board to honor arbitration awards in unfair labor practice cases are equally persuasive to a similar acceptance of the arbitral process in a representation proceeding such as the instant one. Thus, where, as here, a question of contract interpretation is in issue, and the parties thereto have set up in their agreement arbitration machinery for the settlement of disputes arising under the contract, and an award has already been rendered which meets Board requirements applicable to arbitration awards, we think that it would further the underlying objectives of the Act to promote industrial peace and stability to give effect thereto. It is true, of course, that under Section 9 of the Act the Board is empowered to decide questions concerning representation. However, this authority to decide questions concerning representation does not preclude the Board in a proper case from considering an arbitration award in determining whether such a question exists."

a fair one and the results were not repugnant to the Act.[8] As the Board recently stated:

"There is no question that the Board is not precluded from adjudicating unfair labor practice charges even though they might have been the subject of an arbitration proceeding and award. Section 10 (a) of the Act expressly makes this plain, and the courts have uniformly so held. However, it is equally well established that the Board has considerable discretion to respect an arbitration award and decline to exercise its authority over alleged unfair labor practices if to do so will serve the fundamental aims of the Act.

"The Act, as has repeatedly been stated, is primarily designed to promote industrial peace and stability by encouraging the practice and procedure of collective bargaining. Experience has demonstrated that collective-bargaining agreements that provide for final and binding arbitration of grievance and disputes arising thereunder, 'as a substitute for industrial strife,' contribute significantly to the attainment of this statutory objective." *International Harvester Co.,* 138 N. L. R. B. 923, 925–926.

Thus the weight of the arbitration award is likely to be considerable, if the Board is later required to rule on phases of the same dispute. The Board's action and the awards of arbiters are at times closely brigaded. Thus where grievance proceedings are pending before an arbiter, the Board defers decision on the eligibility of discharged employees to vote in a representation case, until the awards are made. See *Pacific Tile & Porcelain Co.,* 137 N. L. R. B. 1358, 1365–1367, overruling *Dura Steel Products Co.,* 111 N. L. R. B. 590. See 137 N. L. R. B., p. 1365, n. 11.

---

[8] *Monsanto Chemical Co.,* 97 N. L. R. B. 517; *Wertheimer Stores Corp.,* 107 N. L. R. B. 1434.

Should the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence; and if the employer's action had been in accord with that ruling, it would not be liable for damages under § 301. But that is not peculiar to the present type of controversy. Arbitral awards construing a seniority provision (*Carey* v. *General Electric Co.*, 315 F. 2d 499, 509–510), or awards concerning unfair labor practices, may later end up in conflict with Board rulings. See *International Association of Machinists*, 116 N. L. R. B. 645; *Monsanto Chemical Co.*, 97 N. L. R. B. 517. Yet, as we held in *Smith* v. *Evening News Assn., supra*, the possibility of conflict is no barrier to resort to a tribunal other than the Board.

However the dispute be considered—whether one involving work assignment or one concerning representation—we see no barrier to use of the arbitration procedure. If it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of a strike to bring the matter to the Board. If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party.

By allowing the dispute to go to arbitration its fragmentation is avoided to a substantial extent; and those conciliatory measures which Congress deemed vital to "industrial peace" (*Textile Workers* v. *Lincoln Mills, supra*, at 455) and which may be dispositive of the entire dispute, are encouraged. The superior authority of the Board may be invoked at any time. Meanwhile the therapy of arbitration is brought to bear in a complicated and troubled area.

*Reversed.*

Mr. Justice Goldberg took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, concurring.

I join the Court's opinion with a brief comment. As is recognized by all, neither position in this case is without its difficulties. Lacking a clear-cut command in the statute itself, the choice in substance lies between a course which would altogether preclude any attempt at resolving disputes of this kind by arbitration, and one which at worst will expose those concerned to the hazard of duplicative proceedings. The undesirable consequences of the first alternative are inevitable, those of the second conjectural. As between the two, I think the Court at this early stage of experience in this area rightly chooses the latter.

MR. JUSTICE BLACK, with whom MR. JUSTICE CLARK joins, dissenting.

The International Union of Electrical Workers (IUE), of which petitioner is president, and another union, the Federation, each have collective bargaining contracts with and are certified bargaining agents for employees of the respondent, Westinghouse Electric Corporation. IUE's contract covers "all production and maintenance" employees, but not "salaried technical" employees. Federation's contract covers "all salaried, technical" employees but not "production and maintenance" employees. IUE demanded that Westinghouse stop permitting a number of Federation employees to do certain work, claiming that what they were doing was "production and maintenance" work and that therefore IUE's members, not Federation's, were entitled to these jobs. Westinghouse refused to make the change, whereupon IUE, instead of filing an appropriate proceeding to have the dispute decided by the National Labor Relations Board (as I understand the Court to hold that it could have done), called on Westinghouse to arbitrate the dispute

with IUE. This demand rested on a provision of the IUE–Westinghouse contract agreeing to arbitration of grievances growing out of the "interpretation, application or claimed violation" of the contract. Westinghouse resisted arbitration, contending that the dispute ought to be resolved by the National Labor Relations Board, and the Court of Appeals of New York, agreeing with Westinghouse, refused to compel Westinghouse to arbitrate.[1]

I agree with the New York court and would affirm its judgment. Stripped of obscurantist arguments, this controversy is a plain, garden-variety jurisdictional dispute between two unions. The Court today holds, however, that the National Labor Relations Act not only permits but compels Westinghouse to arbitrate the dispute with only one of the two warring unions. Such an arbitration could not, of course, bring about the "final and binding arbitration of grievance[s] and disputes" that the Court says contributes to the congressional objectives in passing the Labor Act. Unless all the salutary safeguards of due process of law are to be dissipated and obliterated to further the cause of arbitration, the rights of employees belonging to the Federation should not, for "policy considerations," be sacrificed by an arbitration award in proceedings between IUE and Westinghouse alone. Although I do not find the Court's opinion so clear on the point as I would like, I infer that it is not holding that this misnamed "award" would be completely final and binding on the Federation and its members. What the Court does plainly hold, however—that "the weight of the arbitration award is likely to be considerable, if the Board is later required to rule on phases of the same dispute"—seems only a trifle less offensive to established due process concepts. And this means, I suppose, that this same award, *ex parte* as to Federation, must be given

---

[1] 11 N. Y. 2d 452, 184 N. E. 2d 298, 230 N. Y. S. 2d 703.

the same or greater weight in any judicial review of the Board's final order involving the same "phases of the same dispute."

Moreover, the Court holds that suits for damages can be filed against the employer in state courts or federal courts under § 301 of the Taft-Hartley Act, 29 U. S. C. § 185, for the "unfair labor practice" of failing to bargain with the right union when two unions are engaged in a jurisdictional dispute. The employer, caught in that jurisdictional dispute, is ordinarily in a helpless position. He is trapped in a cross-fire between two unions. All he can do is guess as to which union's members he will be required by an arbitrator, the Labor Board, or a court to assign to the disputed jobs. If he happens to guess wrong, he is liable to be mulcted in damages. I assume it would be equally difficult for him to prophesy what award an arbitrator, the Labor Board, or a judge will make as to guess how big a verdict a court or a jury would give against him. It must be remembered that the employer cannot make a choice which will be binding on either an arbitrator, the Board, or a court. The Court's holding, thus subjecting an employer to damages when he has done nothing wrong, seems to me contrary to the National Labor Relations Act as well as to the basic principles of common everyday justice.

The result of all this is that the National Labor Relations Board, the agency created by Congress finally to settle labor disputes in the interest of industrial peace, is to be supplanted in part by so-called arbitration which in its very nature cannot achieve a final adjustment of those disputes. One of the main evils it had been hoped the Labor Act would abate was jurisdictional disputes between unions over which union members would do certain work.[2]

---

[2] See *Labor Board* v. *Radio & Television Broadcast Engineers Union*, 364 U. S. 573; cf. *Order of Railway Conductors* v. *Pitney*, 326 U. S. 561, 567.

The Board can make final settlements of such disputes. Arbitration between some but not all the parties cannot. I fear that the Court's recently announced leanings to treat arbitration as an almost sure and certain solvent of all labor troubles has been carried so far in this case as unnecessarily to bring about great confusion and to delay final and binding settlements of jurisdictional disputes by the Labor Board, the agency which I think Congress intended to do that very job.

I would affirm.