**LANCO COAL COMPANY, a corporation, Plaintiff,**

v.

**SOUTHERN LABOR UNION, LOCAL NO. 250, an unincorporated association, functioning as a labor organization, Defendant.**

Civ. A. No. 70–903 J.

United States District Court, N. D. Alabama, Jasper Division.

Dec. 21, 1970.

M. L. Taliaferro, C. V. Stelzenmuller, and Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for plaintiff.

Cooper, Mitch & Crawford, Birmingham, Ala., for United Mine Workers District 20.

## MEMORANDUM OF DECISION

POINTER, District Judge.

The above styled cause was heard by the Court on December 16, 1970, on plaintiff's application for a preliminary injunction. Appearing for the plaintiff were C. V. Stelzenmuller and J. Fredrick Ingram, Attorneys, Birmingham. The defendant was not represented by counsel.[1] Present in court by reason of allegations contained in the complaint charging the United Mine Workers District 20 with support of the strike was its attorney, Jerome Cooper, Birmingham. Evidence had been taken *ore tenus* on December 11th, at the time of considering plaintiff's application for a temporary restraining order, and, without objection, this earlier testimony was considered by the Court along with that adduced at the December 16th hearing. The plaintiff has supplied the court with an extensive brief, which has been considered in relation to the evidence.

## FINDINGS OF FACT

The plaintiff, Lanco Coal Company, has a contract recognizing the defendant, Southern Labor Union, Local No. 250, as the exclusive labor organization representing its employees. This contract, which is effective until April 25, 1971, contains a broad provision for arbitration—not only of differences as to the interpretation of the agreement, but also "about matters not specifically mentioned in this agreement" and "any trouble of any kind" at the mine.

On or about December 4, 1970, the members of Local 250 engaged in a strike and began picketing plaintiff's facilities. The strike has continued without interruption until the present time and it appears likely to continue unless Court action is taken. Plaintiff's employees are on strike because they have become dissatisfied with their representation by Southern Labor Union. Apparently the employees' loyalties have shifted to the United Mine Workers of America, but it is inappropriate for the court at this time to decide which union is preferred by a majority. The employees have no grievance against the company.

## ISSUE

The sole issue in this case is whether a dispute involving only the question of representation—and not involving work assignment issues or in fact any dispute against the company—is one in which the District Courts are still under the proscription of 29 U.S.C. § 104 notwithstanding the decision in Boys Markets Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

## CONCLUSIONS OF LAW AND OPINION

■ Jurisdiction is grounded in 29 U.S.C. § 185. But jurisdiction to hear

---

1. The complaint was accepted on December 11, 1970, by Lawrence Sides on behalf of the defendant Local No. 250. Sides had been President of the Local, and apparently was still President at the time service was made on him. By the time of the hearing on December 16th, however, Sides no longer considered himself as an officer or member of Local No. 250. The Alabama State representative for Southern Labor Union, who was also its national secretary, was present on December 11, 1970, at the hearing of plaintiff's application for a temporary restraining order and observed the fact that Local No. 250 was without legal counsel and that Mr. Sides was hardly one with whom the interests of Southern Labor Union could be trusted.

the suit for alleged violation of the contract does not, of course, relieve the court of the restraints imposed by 29 U.S.C. § 104, namely, that the federal courts shall not issue injunctions requiring persons "to perform any work or to remain in any relation of employment" or to remain "a member of any labor organization".

The Supreme Court in Boys Markets Inc. v. Retail Clerks Union made it clear that it was not voiding the proscriptions of § 104—that the injunction approved therein was in aid of, and to assure the vitality of, the policy towards settlement of disputes through arbitration—and that, even where a contract should provide for mandatory arbitration and a dispute arise under that clause, the Court should consider the "ordinary principles of equity" which govern issuance of injunctions.[2]

The policy considerations which produced Boys Markets do not appear present in the instant case. True, the issue of representation can, under Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L. Ed.2d 320 (1964), be subject to arbitration (and the language of the collective bargaining agreement in this case is broad enough to reach the outer limits of areas which can be arbitrated). However, as noted in *Carey*, arbitration in such circumstances will only be salutary and persuasive in the NLRB proceedings, which is the agency of government principally charged with responsibility over such matters.

One traditional consideration in the use of equity powers is the avoidance of multiple litigation. The doctrine that equity does not deal in "halves" is also of significance. In the instant case the issuance of this injunction will not necessarily eliminate other disputes but

may indeed produce a fragmentation of remedies.

This is a case where the priority of position of the National Labor Relations Board should be protected. The plaintiff can, if it desires, initiate proceedings before the NLRB, which can in turn seek injunctive relief before this court if it deems appropriate under 29 U.S.C. § 160. Further changes in this procedure should come through Congress, rather than on the basis of *Boys Markets*.

An order will be entered in accordance with the foregoing findings and conclusions.

---

2. The contract in question does not contain a no-strike clause, but this will normally be implied from the binding arbitration clause. Local 174 Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

Moreover, it appears that the rationale of the *Boys Markets* decision is not the enforcement of a no-strike provision in the contract, but the use of general equity powers to assure the vitality of the court's enforcement of the arbitration clause.