**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHASE MANUFACTURING COMPANY, Respondent.**

No. 73-1270.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1974.

Decided Feb. 5, 1974.

Elliott Moore, Acting Asst. Gen. Counsel, Laura Blumenfeld, Atty., N.L.R.B., Washington, D. C., for petitioner.

Willis B. Ferebee, Milwaukee, Wis., for respondent.

Before HASTINGS, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

PER CURIAM.

This case is before us on application of the National Labor Relations Board to enforce its order of December 13, 1972 (200 NLRB No. 128) issued against Chase Manufacturing Company. The Board found that the company had violated Section 8(a)(1) of the Act "[b]y telling employees in effect it intended to cease dealing with the Union or intended to recognize another union and by stating to employees that it would hire new employees at less than contract wage rates, and that it would notify the Union it would not enter into another contract . . . ." The Board further found the company violated Section 8(a)(5) and (1) of the Act "[b]y dealing directly with employees concerning their rates of pay rather than dealing with the recognized bargaining representative . . . ." and also "[b]y unilaterally cutting the wages of employee Behnke and Peschl in October 1970 below the wage rates specified in the applicable collective bargaining agreement . . . ."

We hold that there is substantial evidence on the record as a whole to support these findings.

The company in this Court challenges only the Board's remedy providing that employees Behnke and Peschl be made whole for the loss of earnings "by payment to each of them of a sum of money equal to the amount he would have earned under the applicable contract rate from the date of the illegal reduction until his lawful discharge on January 6, 1971, less the amount actually paid him during that period, the backpay to include interest at the rate of 6 percent on the amount unlawfully withheld." The company argues that in ac-

cordance with the policy of the Act on the settlement of grievances (29 U.S.C. § 173(d)) [1] and the Board's decision in Dubo Manufacturing Corp., 142 NLRB No. 47 (1963), its motion before the Administrative Law Judge, renewed before the Board, to defer the matter of back pay to arbitration should have been granted.

The company took the position before the Board that the admitted unilateral pay reductions involved contractual violations, remediable solely through arbitration. However, the Board found, and we agree, that "the wage reductions were part and parcel of an unlawful course of conduct whereby Respondent intended to rid itself of the established bargaining relationship and its attendant obligations of which the contract wage rates were but a part."

■ Where the conduct involved constitutes both a contract violation and an unfair labor practice, as is often the case, the Board is not thereby precluded from acting.

"Admittedly, the Board has no plenary authority to administer and enforce collective bargaining contracts. Those agreements are normally enforced as agreed upon by the parties, usually through grievance and arbitration procedures, and ultimately by the courts. But the business of the Board, among other things, is to adjudicate and remedy unfair labor practices. Its authority to do so is not 'affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise . . . .' § 10(a), 61 Stat. 146, 29 U.S.C. § 160(a). Hence, it has been made clear that in some circumstances the authority of the Board and the law of the contract are overlapping, concurrent regimes, neither pre-empting the other. NLRB v. C & C Plywood

1. Section 203(d), 29 U.S.C. § 173(d), provides in pertinent part:
"Final adjustment by a method agreed upon by the parties is hereby declared to

be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."

**1302**

Corp., 385 U.S. 421, [87 S.Ct. 559, 17 L.Ed.2d 486] (1967); Carey v. Westinghouse Electric Corp., 375 U.S. 261, 268, [84 S.Ct. 401, 11 L.Ed.2d 320] (1964); . . . Arbitrators and courts are still the principal sources of contract interpretation, but the Board may proscribe conduct which is an unfair labor practice even though it is also a breach of contract remediable as such by arbitration and in the courts. Smith v. Evening News Assn., 371 U.S. 195, 197–198, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). It may also, if necessary to adjudicate an unfair labor practice, interpret and give effect to the terms of a collective bargaining contract. NLRB v. C & C Plywood Corp., 385 U.S. 421 [, 87 S.Ct. 559, 17 L.Ed.2d 486] (1967)."

NLRB v. Strong, 393 U.S. 357, 360–361, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969). Accord, NLRB v. Scam Instrument Corp., 394 F.2d 884, 887 (7th Cir. 1968), cert. denied, 393 U.S. 980, 89 S.Ct. 449, 21 L.Ed.2d 441.

█ The Board will defer to the arbitral process under certain circumstances. "[W]here, as here, the contract clearly provides for grievance and arbitration machinery, where the unilateral action taken is not designed to undermine the Union and is not patently erroneous but rather is based on a substantial claim of contractual privilege, and it appears that the arbitral interpretation of the contract will resolve both the unfair labor practice issue and the contract interpretation issue in a manner compatible with the purposes of the Act, then the Board should defer to the arbitration clause conceived by the parties."

Jos. Schlitz Brewing Co., 175 NLRB 141, 142 (1969). Here, there is no claim that the company believed it had a right under the agreement to unilaterally reduce wages but rather involves, as the Board found, "Respondent's complete rejection of the principles of collective bargaining . . . ." Thus, the company is not entitled to submit the matter of back pay to arbitration under either the provisions of the Act or the policy of the Board.

Order enforced.