DILLON COMPANIES, INC., a Kansas corporation d/b/a King Soopers, Inc., Plaintiff,

v.

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL 7, AFL–CIO, CLC, Defendant.

Civ. A. No. 83–K–2429.

United States District Court, D. Colorado.

April 13, 1984.

---

6. *See* Gates Affidavit at ¶ 4; at least "some of the callers seemed to appreciate this assurance."

Walter V. Siebert, Sherman & Howard, Denver, Colo., for plaintiff.

Thomas B. Buescher, Brauer & Buescher, P.C., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This labor dispute involves three King Soopers grocery stores in Colorado Springs and Denver. Dillon Companies, Inc., began the action seeking to vacate two arbitration awards issued as a result of a dispute with the defendant union concerning the application of the collective bargaining agreement in force between them. Jurisdiction exists by virtue of § 301(a) of the National Labor Relations Act, 29 U.S.C. § 185, as well as the United States Arbitration Act, 9 U.S.C. § 1 et seq. Since I find the arbitrator's awards draw their essence from the collective bargaining agreements and are neither arbitrary or capricious, I grant the union's cross-motion for summary judgment and deny that of Dillon's.

Dillon and the union are parties to two collective bargaining agreements with terms running from May 2, 1982 to May 4, 1985. One covers those grocery stores owned and operated by Dillon in the metropolitan Colorado Springs area, the other those stores in the Denver area. Article 37 in each agreement deals with the procedure "[i]n the event of the opening of a new store within the bargaining unit ...." Section 96 of that article requires the employer to give notice to all employees who might be interested in transferring to the new store; to fill job openings created by the new store or by transfers to it with laid off employees in advance of any new hirings; and to staff the new stores within the geographical area of the agreement with not less than 60% of employees covered by the bargaining agreement, if available.

The Colorado Springs recognition clause provides:

the Employer recognizes the Union as the sole collective bargaining agent for all employees ... employed by the Employer in the grocery store or stores owned or operated by the Employer in Metro Colorado Springs, Colorado ....

The Denver agreement recognition clause is slightly different. It reads:

The Employer recognizes the Union as the sole collective bargaining representative for all employees actively engaged in the handling and selling of merchandise ... employed by the Employer in the grocery store or stores owned and oper-

ated by the Employer within a twenty-five (25) mile radius measured from the center of Broadway and Colfax Avenues, Denver, Colorado (such jurisdiction to apply to current stores represented by this Union and future stores only of the Employer) ....[1]

For nearly 25 years, the parties extended the existing collective bargaining agreement to new stores as they opened in Denver and Colorado Springs. The company did so without requiring proof from the union of majority support in any fashion. In September and October, 1983, Dillon opened three new stores, one in Colorado Springs, and two in Denver. Dillon notified the union that it would "no longer grant recognition to your local union at new stores, absent a showing that you do, in fact, represent a majority of the employees in an appropriate unit." The union grieved Dillon's decision. Expedited hearings on the grievance ensued on the stipulated issues of whether Dillon violated the Colorado Springs and Denver agreements when it refused to apply those agreements to Store # 58 in Colorado Springs, which it opened on September 25, 1983, and Stores # 1 and # 10, which it opened in Denver on October 2 and 16, 1983, respectively.

Arbitrator Winograd held hearings on October 19 and November 3, 1983 and issued expedited awards soon thereafter. In both instances he upheld the union's position. In light of the parties' past history, there was no doubt in the arbitrator's mind that the recognition clauses of the bargaining agreements, together with section 96's future stores procedure, required Dillon to recognize the union as the bargaining representative of the members of the bargaining unit in the newly opened stores. He also ordered the company to make appropriate contributions to pension and health and welfare funds as set out in the agreements. This appeal followed.

Dillon advances numerous arguments to set aside the awards. First, it argues that the arbitrator was without jurisdiction to entertain the proceedings because he was resolving a question concerning representation, the exclusive province of the NLRB. Second, Dillon argues that the arbitrator erred in giving effect to the recognition clause as "future stores" clauses because the union failed to prove it represented the majority of employees in the appropriate bargaining unit. Third, the company claims the arbitrator erred by finding a presumption of majority status in the new stores from the fact that a majority of the employees at the new stores had transferred from stores that were covered by collective bargaining agreement, all by dint of article 96. Finally, Dillon claims the awards violate "the express public policy that employees should have the right to express their desires as to union representation." Brief at 15.

Dillon argued both before the arbitrator and in its brief here that only the National Labor Relations Board possessed jurisdiction to hear the dispute because it involved a question concerning representation. Such a question arises when an employer refuses to recognize a labor organization seeking recognition as a bargaining agent, "thus requiring the Board to determine whether the union ... represents a majority of the employees in an appropriate bargaining unit." *The Developing Labor Law*, (2d ed. C. Morris ed. 1983), 341. The arbitrator concluded that he had concurrent jurisdiction with the NLRB to hear the dispute. As he put it in the Colorado Springs award:

The foregoing analysis leads to the conclusion that jurisdiction exists in this arbitrator to determine whether the contract between the parties requires that the Union be recognized as the bargaining agent of the employees .... As a

---

**1.** During the 1982 contract negotiations, the Union proposed extending the geographical area of the contract to a 25 mile radius from the intersection of Broadway and Colfax Avenues in Denver. This was amenable to Dillon, save for several non-union stores it had already opened outside the metropolitan Denver area, but within the proposed 25 mile radius. Thus the parties agreed to change the recognition clause explicitly to exempt those stores from the ambit of the new agreement.

matter of contract interpretation the [National Labor Relations] Board will defer to the decision of the arbitrator.

Colorado Springs Award at 27.

Arbitrator Winograd, recognizing the jurisdictional tightrope he was walking, canvassed the relevant case law in reaching his decision. He concluded that there were two broad categories of cases. He understood one group as turning on whether the Board *must accept* as binding on it an arbitrator's decision concerning representation,[2] and the other turning on whether the Board should refrain from acting on a representation question pending an arbitrator's ruling on the issues.[3] Neither category, he found, forbade him from exercising jurisdiction, subject only to review and possible reversal by the NLRB. A portion of the Denver award is worth quoting at length:

> Finding nothing in the reported decisions which precludes him from granting a remedy, the arbitrator finds substantial logic to the conclusion that he may grant a remedy, albeit that the remedy granted is subject to review by the NLRB. Initially, the arbitrator does not believe that it would further the policy of the NLRA to foster industrial peace to allow the arbitrator to declare the rights of the parties, but prohibit him from granting a remedy for violation of those rights. It is a fundamental concept of law that if there is a right there is a remedy.
>
> Additionally, the arbitrator is persuaded that economy and efficiency dictate that he should grant to the parties a remedy if warranted by the case. If the arbitrator cannot remedy violations of the collective bargaining agreement, it is fruitless for the parties to present their contractual disputes to the arbitrator. The party committing the violation would have nothing to lose, and the victim of the violation would have nothing to gain by arbitrating a dispute.

Denver Award at 33, 34.

The precise issue of an arbitrator's concurrent jurisdiction is one of first impression. The union is correct in pointing out that at one time the Board willingly deferred to arbitrators' awards in accretion cases. *See Raley's Supermarkets*, 143 NLRB 256 (1963). By 1975, however,

> the Board was stating, without citation: '[It is well established that the Board will not defer to arbitration or an award concerning representation issues such as the ones involved herein as opposed to questions of contract interpretation.' Circuit Judge Friendly cogently commented: 'We do not think it profitable to engage in lengthy discussion of decisions, notably *Raley's* .... [T]he Board seems to have become rather disenchanted with *Raley's*.'

*The Developing Labor Law*, at 977. (Footnotes and citations omitted). The union suggests that *Raley's* has merely been refined, but not reversed, in the intervening years.

Alternatively, the union suggests that this is not so much a question concerning representation as one concerning "voluntary recognition and voluntary definitions of bargaining units." The union argues that the Board recognizes multi-store units as appropriate bargaining units. Further, it claims that the Board will honor an agreement concerning appropriate bargaining units "even if the Board would not have found such a unit to be appropriate if the case had been presented to it originally." Brief at 16, 17. To the union, the only issue for the arbitrator to decide is whether their agreement concerning bargaining units includes both existing and future stores within a certain area.

▮ I see no reason why there should not be concurrent jurisdiction between an

---

**2.** *See Horn & Hardart Co.*, 173 NLRB 1077 (1968); *Patterson-Sargent Division of Textron, Inc.*, 173 NLRB 1290 (1968); *Woolwich, Inc.*, 185 NLRB 783 (1970); *Hershey Foods Corp.*, 208 NLRB 452 (1974); *Williams Transportation Co.*, 233 NLRB (1977); *Combustion Engineering, Inc.*, 195 NLRB 909 (1972).

**3.** *See Beacon Photo Service, Inc.*, 163 NLRB 706 (1967); *Marion Power Shovel Co., Inc.*, 230 NLRB 576 (1977); *Warehouse Markets, Inc.*, 174 NLRB 401 (1969).

arbitrator and the Board in such a case. In the absence of binding or even persuasive authority to the contrary, I will follow the Supreme Court's lead in *Carey v. Westinghouse Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). There the court said:

> As the Board's decisions indicate, disputes are often difficult to classify .... Even if [a dispute] is in form a representation problem, in substance it may involve problems of seniority ... or other aspects of work assignment disputes. If that is true, there is work for the arbitrator whatever the Board may decide.

375 U.S. at 269–70, 84 S.Ct. at 407–08. I recognize the Board no longer defers to arbitral decisions as it did when *Carey* was written. *See* 375 U.S. at 270–71, 84 S.Ct. at 408–09. I see no reason, however, why the "therapy of arbitration" should not be "brought to bear in a complicated and troubled area" such as the instant case presents. 375 U.S. at 272, 84 S.Ct. at 409.

Mr. Justice Harlan expressed the court's and my dilemma best:

> As is recognized by all, neither position in this case is without its difficulties. Lacking a clear-cut command in the statute itself, the choice in substance lies between a course which would altogether preclude any attempt at resolving disputes of this kind by arbitration, and one which at worst will expose those concerned to the hazard of duplicative proceedings. The undesirable consequences of the first alternative are inevitable, those of the second conjectural. As between the two, I think the Court at this early stage of experience in this area rightly chooses the latter.

375 U.S. 273, 84 S.Ct. 409–10.

■ The crux of the substantive issue before me is whether the arbitrator correctly ruled on the future stores clause issue.

Arbitrator Winograd interpreted sections 1 and 96 of the bargaining agreements as future stores or accretion clauses. Under the NLRB's present interpretation of such clauses, they are enforceable as "contractual waivers of an employer's right to petition for a Board election upon a request for recognition ...." *Joseph Magnin Company, Inc.*, 257 NLRB 656, 666 (1981). Future stores clauses are enforceable under *Houston Division of the Kroger Co.*, 219 NLRB 388 (1975), (*Kroger II*), but only upon proof of a union's majority status. The arbitrator interpreted paragraph 4 of section 96 as creating a presumption of majority status. Under paragraph four the company is required to staff any new stores with at least 60% of employees covered by the bargaining agreement. There is no question that this was done. Dillon argues that "the law does not support the proposition that because a majority of the staff of a new store is made up of transferees from existing bargaining unit stores, a presumption of majority status is available to the Union."

Alternatively, it argues that whatever presumption did arise by virtue of the contract was adequately rebutted with evidence from certain "Struksnes" polls it conducted on October 19, 1983. *See Struksnes Const. Co.*, 165 NLRB 1062 (1967). Briefly stated, the company conducted two days of "secret polls" at its store # 1 in Denver, the results of which on their face indicated support for a non-union store.

Like the arbitrator, I conclude that the 60% employee transferee requirement was intended and designed to be a reasonable form of demonstrating majority support as required by *Houston Division of the Kroger Co.*, 208 NLRB 927 (1974) (*Kroger I*). Whether such a contractually-mandated majority will satisfy the NLRB is a question for the Board.[4] Dillon has found no

---

4. The union has attached letters from the NLRB's Office of the General Counsel denying an appeal from a Regional Director's refusal to issue a complaint in a case similar to the one at bar. The letters suggest that the board will give effect to a contractually established majority.

The evidence established that the Employer was arguably bound by past practice and/or

contractual language to staff newly opened stores with employee transfers or by using laid-off employees in preference to new hires. Such employees are normally presumed to support the Union. Accordingly, it would not be unlawful, under an "after-acquired stores" clause (whether established by the contract or by past practice), to apply the contract to

case suggesting that such a procedure is impermissible. In the absence of such case law I conclude that the issue is one of fact—Did the store actually transfer the required 60%?—and one of contractual intent—Did the parties intend this to be a reasonable form of demonstrating the union's majority support? The arbitrator answered both questions in the affirmative and I see no reason to disturb his judgment. I am in agreement with Arbitrator Winograd that what matters here is not so much a question of statutory presumption but whether there is a "contractually mandated procedure which creates that presumption." Denver Award at 40.

Finally, Dillon argues that it effectively rebutted whatever presumption arose from the 60% transfer requirement by dint of the post opening elections at the Denver store. The arbitrator found, and I agree with his decision, that I

> must look at the situation as it existed on the date of the alleged violation, and not on some subsequent date. As of that date, there was no significant objective evidence that less than 60% of the staff at each store supported the Union ....

Denver Award at 44. Although the arbitrator found the poll results to be both irrelevant and unreliable, such a determination is better left for the NLRB. Whatever happened after the opening date of the stores was simply of no effect at all on whether the bargaining agreement requires a 60% staffing of union personnel in newly opened stores.

## CONCLUSION

Under the Supreme Court's Steelworkers Trilogy [5] I cannot interfere with the decision of an arbitrator chosen pursuant to a collective bargaining agreement unless the arbitrator's decision fails to draw its essence from the collective bargaining agreement. Contrary to all Dillon's assertions, I

conclude that the arbitrator's decision draws its very pith and heart from the bargaining agreement and that therefore his awards should be affirmed. Accordingly, I grant defendants motion for summary judgment and deny that of the plaintiff.

---

those employees since the Union *would* enjoy majority status.
*Letter of August 5, 1983 from the Office of the General Counsel, National Labor Relations Board,* submitted by the Union as Attachment 5.

**5.** *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4

L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrier and Gulf Navigation Company,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).