904 F.2d 47
 134 L.R.R.M. (BNA) 2388, 284 U.S.App.D.C.
227, 59 USLW 2011,
115 Lab.Cas. P 10,071
 LOCAL 666, INTERNATIONAL ALLIANCE OF THEATRICAL STAGE
EMPLOYEES AND MOVING PICTURES MACHINE OPERATORS OF
the UNITED STATES AND CANADA (AFL-CIO), Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 89-1533.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 8, 1990.
Decided May 29, 1990.
 
 Bernard Mamet, with whom Paul T. Berkowitz, Chicago, Ill., was on the brief, for petitioner.
 Joseph A. Oertel & Christopher W. Young, Counsel NLRB, with whom Jerry M. Hunter, General Counsel NLRB, Robert E. Allen, Associate General Counsel NLRB, and Aileen A. Armstrong, Washington, D.C., Deputy Associate General Counsel NLRB, were on the brief, for respondent.
 Before WALD, Chief Judge, and MIKVA and BUCKLEY, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 The sole issue raised by this petition is whether a proposal submitted by Petitioner's employer during collective bargaining negotiations concerned a change in work jurisdiction or a change in the scope of the bargaining unit. The former may be pressed to impasse under the National Labor Relations Act (29 U.S.C. Secs. 158(a)(5), (d), "the Act"); the latter may not. If a legitimate impasse occurs, the employer is free to take unilateral action when the contract expires. But the scope of the bargaining unit can never be changed unilaterally even upon expiration of a collective bargaining agreement. Id. The National Labor Relations Board ("NLRB") determined that the proposal did not concern a change in the scope of the bargaining unit, and denied Petitioner's claim that an unfair labor practice occurred. We agree, and accordingly we deny the petition for review.
 
 
 2
 * BACKGROUND
 
 
 3
 Petitioner, Local 666, International Alliance of Theatrical Stage Employees and Moving Pictures Operators, ("IATSE Local 666" or "the Petitioner") represents cameramen who film, develop, and process news footage for Channel WJKW-TV 8, a Cleveland television station owned by Storer Communications, Inc. ("the Employer" or "the Company"). Petitioner and a sister local, IATSE Radio and Television ("IATSE R & T"), were certified by the Board as exclusive bargaining representatives for the Company's camera operators in the Program Department. Through separate collective bargaining agreements, IATSE Local 666 obtained exclusive jurisdiction to perform all camerawork related to news programming and R & T gained exclusive jurisdiction over all remaining non-news camerawork.
 
 
 4
 In the last collective bargaining agreement between IATSE Local 666 and the Company before this dispute arose, the parties included a provision covering both the composition of the unit and the work jurisdiction of that unit. The provision stated, in relevant part:
 
 APPLICATION OF AGREEMENT--JURISDICTION
 
 5
 A. This agreement shall be applicable to a bargaining unit comprised of all employees of [the Company] who are engaged in the operation of portable electronic cameras and associated video tape equipment.... [and which] equipment only shall be used in conjunction with hard news assignments and documentaries.
 
 
 6
 * * * * * *
 
 
 7
 C. Employees shall not be required to perform any work inconsistent with Paragraph A, above....
 
 
 8
 D. The Company may at its discretion assign members of the unit to perform the work in areas excluded by this jurisdiction.
 
 
 9
 In 1983, the Company and IATSE Local 666 began negotiating a successor to this contract. The Union demanded higher wages, and the Company proposed numerous changes to the "Application of Agreement--Jurisdiction" clause. The Company wished to eliminate IATSE Local 666's exclusive jurisdiction over certain assignments in order to allow cameramen from the R & T union to perform these functions as well. The R & T union had already agreed to a reciprocal provision, allowing Union employees to perform non-news camerawork for the station. IATSE Local 666 and the Company reached an impasse and the Company, after proper warning, unilaterally put its last offer into effect. The new contract contained the following four changes in the Jurisdiction clause:
 
 
 10
 1. Operation of film cameras and processing, still photography and processing of the same, including recording of sound on film when using equipment designed and built into camera equipment is removed from the exclusive jurisdiction of I.A.T.S.E. 666.
 
 
 11
 2. I.A.T.S.E. 666 exclusive geographic jurisdiction is limited to [a seven county area]. Others may do I.A.T.S.E. 666 work outside the above areas.
 
 
 12
 3. [The Company], at its discretion, may assign members of the I.A.T.S.E. R & T unit to work in all areas of the I.A.T.S.E. 666 jurisdiction.
 
 
 13
 4. [The Company] shall have the right to use any I.A.T.S.E. material photographed by any I.A.T.S.E. member in any program originating from [the Station].
 
 
 14
 The first three changes removed the taping of hard news in a specific geographic area from the exclusive jurisdiction of the employees represented by IATSE Local 666, thereby allowing R & T to perform some of that work. The fourth change allowed the Company to use an IATSE Local 666 member's footage in its non-news broadcasts.
 
 
 15
 One year after the Company imposed these provisions, they were formally incorporated in a new contract between IATSE Local 666 and the Company. Thereafter, IATSE Local 666 filed an action with the NLRB challenging the Company's proposals (and their unilateral imposition) on the ground that the proposals were not directed to the "terms and conditions of employment," and hence could not be bargained to impasse under Sections 8(a)(5) and (a)(1) of the Act. After a full hearing before an administrative law judge ("ALJ"), and subsequent review by the Board, the NLRB denied IATSE Local 666's claims. The Board concluded that the proposals and changes merely affected the employees' work assignments and work jurisdiction (which may be bargained to impasse), and did not change the composition of the bargaining unit.
 
 II
 ANALYSIS
 
 16
 Under Sections 8(a)(5) and 8(d) of the Act, both the union and the employer are required to bargain in good faith over proposals concerning three categories of "mandatory subjects": wages, hours, and other terms and conditions of employment. 29 U.S.C. Secs. 158(a)(5), (d). Parties to a collective bargaining agreement are also free to propose other "permissive" subjects, but they may not insist on such subjects to the point of impasse or condition agreement upon inclusion of these subjects. Boise Cascade Corp. v. NLRB, 860 F.2d 471, 474 n. 9 (D.C.Cir.1988).
 
 
 17
 In the instant case, the jurisdictional clause that the employer proposed to modify concerned both IATSE Local 666's jurisdiction and its composition: the description of the jobs within IATSE Local 666's jurisdiction also defines who may be members of the union. As a result, when the Company attempted to change the jurisdictional aspects of the clause, it also risked changing the unit description. Newspaper Printing Corp. v. NLRB, 692 F.2d 615, 619 (6th Cir.1982). This court has consistently held that "jurisdictional clauses"--which concern the assignment of work to union members--are "mandatory subjects" which may be pushed to impasse. Boise Cascade, 860 F.2d at 477. We have also held, however, that proposals to change the scope of the employees' bargaining unit are merely permissive subjects that may not be pressed to impasse. Boise Cascade, 860 F.2d at 474; The Idaho Statesman v. NLRB, 836 F.2d 1396, 1400 (D.C.Cir.1988). A tension between the two holdings exists. The legality of the Company's conduct turns upon whether its proposal effectively parsed out the jurisdictional aspects of the agreement without altering the unit's composition.
 
 
 18
 As a reviewing court, we are obliged to uphold the Board's findings of fact in interpreting a past agreement or an impasse proposal if they are supported by substantial evidence on the record as a whole. Idaho Statesman, 836 F.2d at 1401. After a review of the record, both the Administrative Law Judge and the Board concluded that the proposed and implemented changes did not change the scope of the bargaining unit. 295 NLRB no. 11. The ALJ concluded that "the changes do not involve who IATSE 666 represents but rather what these employees do. Under the proposed changes IATSE 666 continues to represent the news cameramen ... but their exclusive work jurisdiction has been limited and some of their work can be done by others." Id. at 14. The ALJ expressly found that "all cameramen formerly represented by IATSE 666 continue to be represented by IATSE 666." Id. at 15.
 
 
 19
 IATSE Local 666 nonetheless maintains that the changes did alter the scope of the bargaining unit because the Company now has discretion to allocate Union work to R & T. As a result of these proposals, IATSE Local 666 is no longer the exclusive representative of all employees defined in the collective bargaining agreement. Petitioner asserts that at least ten percent of the work formerly performed by cameramen under its representation is now being performed by R & T members. Furthermore, it notes, the provision does not set any limit on how much additional work can be transferred. Under proposal 3, "the Company, at its discretion, may assign members of the [Radio & Television] unit to work in all areas of [Petitioner's] jurisdiction." (emphasis added).
 
 
 20
 Petitioner argues that this situation is similar to the impermissible proposal considered by the Tenth Circuit in Newspaper Printing Corp. v. NLRB, 625 F.2d 956 (10th Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981). In that case, the employer insisted upon a proposal which provided that the jurisdiction of the union and the appropriate unit would be defined as " 'including only those employees engaged in all work which the Employer may from time to time designate to be performed in the composing room.' " 625 F.2d at 964. The Tenth Circuit concluded that the proposal affected the scope of the bargaining unit because it would have given the employer the power to alter the composition of the unit at will by unilaterally transferring work out of the unit. The court found that this "would effectively deprive unit employees of their statutory right to collective representation and bargaining.... [by] plac[ing] those jobs beyond the scope of the unit represented by the Union." Id.
 
 
 21
 Petitioner also relies upon this court's Boise Cascade decision. 860 F.2d 471. In that case, an employer and five unions executed bargaining agreements applicable to nine separate units. The employer subsequently proposed and then implemented a plan to consolidate the nine contractual units into three units. The court affirmed the Board's finding that this violated Secs. 8(a)(5) and (a)(1). Petitioner contends that Boise Cascade is on point because the Company is essentially seeking the same thing: to use employees of various bargaining units interchangeably.
 
 
 22
 We find neither of these cases controlling. Both Boise Cascade and Newspaper Printing concerned provisions that changed either the size or the membership of the bargaining unit. In Newspaper Printing, the employer did not merely reserve the right to assign work to another union, but also reserved the right unilaterally to determine what jobs were in the bargaining unit. 625 F.2d at 961. Thus, the company had the direct power to reduce the number of employees within the unit, and not merely alter the work done by those employees. Likewise, in Boise Cascade, the critical feature was not that two unions might have jurisdiction over the same functions, but rather that employees could be removed from their unions at the employer's whim. 860 F.2d at 476. Again, the critical feature was a change in the composition of the unit's membership.
 
 
 23
 By contrast, here the Company has not altered--or retained authority to alter--the personnel of the bargaining unit. IATSE Local 666 concedes that it still represents the same individual cameramen that it represented prior to the change in the jurisdictional clause. Moreover, the Board stated that under its interpretation of the collective bargaining agreement, the Company must assign any subsequently hired cameramen to Petitioner's union if his or her principal tasks relate to news broadcasts. Thus, the bargaining unit has not changed; the only difference is that now the Company can reduce some of Petitioner's members' work by assigning it to R & T members.
 
 
 24
 The Company's proposal, then, falls within the category of mandatory bargaining subjects. An employer is always free to negotiate transfers or reductions in work. Boise Cascade, 860 F.2d at 474. It is well-settled that this includes unilaterally requiring a union to surrender a portion of its jurisdiction to another union. Newspaper Printing Corp. v. NLRB, 692 F.2d 615, 622-23 (6th Cir.1982) ("Newspaper Printing II "). The courts have even held that, under certain circumstances, an employer can unilaterally subcontract away a unit's entire work assignment. Fibreboard Corp. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).
 
 
 25
 The mere fact that a jurisdiction and scope-of-the-bargaining-unit provision are interconnected cannot automatically invalidate any attempt to bargain about jurisdiction. As the Newspaper Printing II court observed, defining a bargaining unit by the work performed " 'does not freeze duties or work tasks of the employees in the union. Thus, the Board's unit finding does not per se preclude the employer from adding to, or subtracting from, the employees' work assignments.' " 692 F.2d at 623 (quoting Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 269, 84 S.Ct. 401, 407-08, 11 L.Ed.2d 320 (1964)).
 
 
 26
 Although the distinction between work jurisdiction and the scope of the bargaining unit is often elusive, we find that under the circumstances of this case, the Board was correct in concluding that the proposals removing all exclusive jurisdiction were mandatory subjects of bargaining. Both in theory and in practice, the proposals do not affect the scope of the bargaining unit: they have not eliminated any positions or otherwise changed the membership of the unit. Moreover, the proposals do not produce the evils that caused the Board to restrict bargaining over the scope of employment: they do not reduce or change Petitioner's ranks or create uncertainty over membership. Rather, the "evil" objected to by Petitioner--the potential for reducing hours or creating competition with other unions--is present in bargaining over any "mandatory subject" such as wages, hours, or terms of employment: as a result of such bargaining, employees may work fewer hours, receive less money, or become disenchanted with their representatives.
 
 
 27
 In affirming the Board's decision, we are mindful that ostensibly innocent jurisdictional proposals could be concocted to corrode the links between unions and their membership. An employer could, conceivably, unilaterally remove a union's exclusive jurisdiction in order to pit one union against another. Although each union would retain the same members, the company would invariably use the members of the unit with the most favorable terms whenever possible. As Justice Stewart presciently observed in Fibreboard Corp. v. NLRB, 379 U.S. 203, 224-25, 85 S.Ct. 398, 410, 13 L.Ed.2d 233 (1964) (Stewart, J., concurring), at some point changes in the work assignments of union employees may so frustrate collective bargaining that they create a Sec. 8(a)(5) or 8(a)(3) violation. A union may take additional precautions by drafting separate provisions defining the bargaining unit and its jurisdiction, or by seeking NLRB certification of the unit based upon the work performed. We note that this case might well have been decided differently had the NLRB certified the bargaining unit based on the terms included in the jurisdictional clause at issue in this case.
 
 III
 CONCLUSION
 
 28
 It is not always easy to distinguish between the concepts of a union's jurisdiction and its scope, particularly when both are defined in relation to the union members' function. Under the particular circumstances of this case, however, we are satisfied that the integrity of the bargaining unit was not violated by the Company's proposals. The Board found that the Company proposals did not reduce the size of the bargaining unit, alter its membership, or permit the assignment of later-hired newscamera operators to a different union. We agree with the Board that, based upon these facts, the Company's changes merely altered what jobs the unit members could perform, not who qualified as unit members. Accordingly, we affirm the decision of the Board and deny the petition for review.
 
 
 29
 So Ordered.