BEER, SOFT DRINK, WATER, FRUIT JUICE, CARBONIC GAS, LIQUOR SALES DRIVERS, HELPERS, INSIDE WORKERS, BOTTLERS, WAREHOUSEMEN, SCHOOL, SIGHTSEEING, CHARTER BUS DRIVERS, GENERAL PROMOTIONAL EMPLOYEES OF AFFILIATED INDUSTRIES LOCAL UNION NO. 744, OF CHICAGO AND VICINITY, Affiliated with The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,

v.

SKOKIE VALLEY BEVERAGE COMPANY, Defendant.

No. 85 C 10621.

United States District Court, N.D. Illinois, E.D.

Sept. 18, 1986.

Marvin Gittler, Barry M. Bennett, Asher, Pavalon, Gittler & Greenfield, Ltd., Chicago, Ill., for plaintiff.

Philip V. Carter, Jeremy P. Sherman, Janice K. Hartwell, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

This order concerns defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, plaintiff's cross-motion for summary judgment is granted, and defendant's motion for summary judgment is denied.

### I. FACTS

The plaintiff, Local Union No. 744 (the "Union"), and the defendant, Skokie Valley Beverage Company (the "Company"), entered into a collective bargaining agreement which was effective between May 1, 1984 and April 30, 1986 (the "Contract"). Article 47 of the Contract sets forth the procedure for processing grievances

against the Company. In relevant part, Article 47 reads as follows:

SECTION 1. All grievances relating solely to the discharge or discipline of an employee must be presented within five (5) working days after the grievance or said grievance shall be deemed abandoned. All other grievances must be presented within thirty (30) days from the date of the occurrence of the grievance or said grievance shall be deemed abandoned. Should the Employer and employee be unable to adjust the grievance, it shall be processed as follows:

Step 1: The Employer and the Union shall, within five (5) working days, after notice of the grievance meet and reach a settlement which shall be final and binding. Such time limit may be extended by mutual agreement of both parties.

Step 2: If the parties fail to reach a settlement within the aforesaid time, then the matter shall be submitted to a Joint Grievance Committee composed of three (3) Employer Representatives designated by the Association and three (3) Union Representatives.

. . . . .

Step 3. If the Joint Grievance Committee is deadlocked on the disposition of the matter and the Union or the Employer involved elects to arbitrate, ... the parties shall agree on an arbitrator.... The finding of the Joint Grievance Committee and the arbitrator shall be final and binding....

. . . . .

SECTION 2. Union as Exclusive Representative. The Union, in the redress of alleged violations by the Employer of this Agreement, shall be the exclusive representative of the interests of each employee covered by this Agreement and only the Executive Board of the Union or their designated representative shall have the right to assert against the Employer any claim, proceeding or action alleging a violation of this Agreement or claiming a right under this Agreement.

On September 16, 1985, the Union filed a written statement of grievance regarding the manner in which certain employees were being paid by the Company ("Grievance 468"). This grievance was forwarded to the Company with a letter from the Union dated September 27, 1985 requesting the procedures in Article 47 be initiated. The Company responded by letter on October 24, 1985 stating that Article 47 procedures could only be initiated by a specific employee, not the Union, since the grievance procedure contemplates that the employer and employee be given a chance to adjust the grievance. Accordingly, the Company refused to process Grievance 468. Subsequently, on January 31, 1986, an individual employee named David Senne filed a grievance through the Union challenging the same type of conduct that the Union protested in Grievance 468. Senne's grievance was processed by the Company and Union through the first two steps of Article 47 and is currently the subject of arbitration. After repeated refusals by the Company to process Grievance 468, the Union filed suit under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, seeking an order compelling arbitration.

## II. DISCUSSION

A motion for summary judgment may only be granted when the moving party establishes that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *County of Milwaukee v. Northrup Data Systems,* 602 F.2d 767, 774 (7th Cir.1979). Although complete agreement may not exist with regard to all facts asserted by the parties, this Court agrees that there are no material facts at issue and finds the facts set forth in Part I of this opinion undisputed. Thus, parties' motions are proper for summary judgment.

At issue in both parties' motions is whether the Union can initiate the grievance procedure set forth in Article 47. The Company bases its contention that the Union is unable to bring a grievance under

Article 47 on three grounds. First, the Company contends that the plain language of Article 47 can only be read to allow individual employees to file grievances and thus initiate the grievance process. Second, the Company argues that the processing of the individual grievance of David Senne through the grievance procedure renders Grievance 468 moot because substantially the same conduct is being challenged in both petitions. Third, the Company asserts that arbitration cannot be compelled since the Union has not exhausted all contractual procedures prerequisite to arbitration. The Company's arguments will be addressed in turn.

The Company's contention that the plain language of the grievance provisions only allows employees to assert grievances stems from its reading of the following sentence in Section 1 of Article 47: "Should the Employer and employee be unable to adjust the grievance, it shall be processed as follows." The Company essentially argues that the failure to mention the Union in this sentence implies that the Union is without power to assert a grievance on behalf of a member employee under Article 47. In supporting this argument, the Company cites other sections of the Contract where the Union is given explicit authority to assert grievances and notes that the Union's own form for filing a grievance against the Company requires a written statement of grievance signed by the aggrieved employee. Arguing that the clear import of Article 47 is to allow only employees to initiate this grievance provision, the Company contends no contractual basis exists for the Union to file grievances on behalf of its membership and thus trigger the Company's duty to arbitrate.

■ Addressing the Company's argument, this Court is guided by principles recently restated by the Supreme Court in *AT & T Technoligies, Inc. v. Communication Workers of America,* — U.S. —, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). As reiterated by the Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at —, 106 S.Ct. at 1418, *citing Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 570–71, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403 (1960) (Brennan, J. concurring). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies, Inc.,* — U.S. at —, 106 S.Ct. at 1418; *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1351–52. Where the agreement contains an arbitration provision, a presumption of arbitrability exists, and an order compelling arbitration will not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* In applying this presumption to a given labor agreement, all doubts are to be resolved in favor of arbitration. *Id.*

■ Turning to the grievance provision currently at dispute, this Court is unable to agree with the Company's restrictive interpretation. The sentence the Company points to in Section 1 of Article 47 is at best ambiguous as to the Union's role in initiating the grievance procedure and must be read in light of that Article's second section. The Union, according to Section 2 of Article 47, is to be the exclusive representative of the employees under the labor agreement. This section also exclusively reserves the decision to assert any claim, proceeding or action under the labor agreement to the Union. Thus, whether a grievance under Article 47 will be asserted and processed to arbitration is controlled by the Union as the employees' exclusive representative. Reading these two sections together does not lead to a "clear and unmistakable" conclusion that the parties did not intend the Union to have the ability to initiate proceedings under Article 47. Instead, Section 2 seems to lead to a contrary conclusion.

Recognizing the presumption of arbitrability and the union's role as an exclusive representative, a court faced with a similar grievance provision ruled that a union had the authority to independently file grievances. *Painters District Council No. 2 v. Tiger Stripers, Inc.,* 582 F.Supp. 860, 863 (E.D.Mo.1984). In *Painters District Council,* the union was claiming nonarbitrability to avoid the requirement that it exhaust contractual remedies before pursuing a claim against the employer in court. To support its claim, the union asserted that the contract's grievance provision only allowed individual employees to file grievances. *Id.* The relevant parts of the grievance provision stated:

> Should any dispute or grievance arise under any terms of this Agreement, the aggrieved employee or employees must file the grievance in writing within five (5) working days of the occurrence of said grievance in order for the grievance to be timely.

*Id.* Rejecting the union's interpretation of the grievance provision, the court reasoned that the union was the exclusive collective bargaining agent for the workers and the grievance procedure was an element of the continuous collective bargaining process. *Id.* at 864, *citing Warrior & Gulf,* 363 U.S. at 581, 80 S.Ct. at 1352. Noting the presumption of arbitrability and the union's ability to litigate the dispute on behalf of the employees, the court concluded the union had the authority to file a grievance as the agent of the employees. *Painters District Council No. 2,* 582 F.Supp. at 864–65.

*Painters District Council* directly applies to the provision currently in dispute. Section 2 of Article 47 makes clear the Union's role as exclusive agent in asserting and processing grievances. Given the presumption of arbitrability and the Union's authority to control the grievance process, Article 47 cannot be interpreted to prohibit the Union from filing a grievance in its own name on behalf of its employee members. The fact that the form provided by the Union for filing grievances requires an employee to make a written signed statement does not dictate the conclusion only

an employee may assert a grievance. The format of the grievance form most likely was designed to promote administrative efficiency in the processing of a particular employee's grievance, not define the role of the Union in initiating the grievance process. Similarly, the fact other provisions in the Contract explicitly allow the Union to file grievances is insufficient to "clearly and unmistakably" show the Union is powerless to initiate Article 47 proceedings. Resolving all doubts in favor of a result leading to arbitration, this Court concludes Article 47 permits the Union to assert grievances under its own name on behalf of aggrieved employees.

The Company next asserts that Grievance 468 was mooted by the grievance subsequently filed by employee David Senne because the conduct being challenged in both grievances is substantially the same. Since the Senne grievance is currently the subject of arbitration, the Company argues a binding resolution of the dispute will result providing interpretation to be applied prospectively by the parties. If the Union is allowed to pursue Grievance 468 to arbitration, the Company contends that it will be forced to duplicate its efforts in two arbitration proceedings with the prospect of receiving inconsistent results.

First, the fact processing Grievance 468 might result in a duplication of efforts is inconsistent with the Company's argument that only individual employees can assert grievances under Article 47. Extending this argument to its logical extreme would require each of the aggrieved employees affected by the disputed practice to file separate grievances to ensure that each would receive full financial relief in the event of a favorable determination. Such an approach would clearly result in far more repetition than the approach presently being taken by the Union.

Second, the provisions of Article 47 make clear a grievance must be filed within 30 days of the challenged action to avoid abandonment of the claim. The grievance filed by Senne on January 31, 1986 thus

covers only the disputed pay levels from January 1, 1986 onward. Grievance 468 is dated September 16, 1985 and refers to an earlier presentation to the Company on August 30, 1985. At a minimum, Grievance 468 encompasses alleged pay deficiencies from August 17, 1985. Moreover, while Senne's grievance can only provide financial relief for him, Grievance 468 has the potential to provide relief for all affected employees in the bargaining unit. Although the Company properly observes that the conduct being challenged in both grievances is identical, the Company cannot deny that Grievance 468 covers a longer time period and a wider number of employees than Senne's grievance. Accordingly, the potential relief sought in Grievance 468 would not be provided by a favorable decision for Senne in the subsequently filed grievance. Contrary to the Company's assertion, the Company is not offering the Union the same relief it seeks in its complaint. Thus, Grievance 468 is not mooted by the subsequently filed grievance by Senne.

 The final argument raised by the Company is tied to its first assertion that only employees can file grievances under Article 47. Here, the Company contends that because the Union has not followed the contractual steps prerequisite to arbitration, no duty to arbitrate has arisen under the Contract. This argument, however, ignores the fact that the Company has refused from the outset to process Grievance 468. The Union cannot be expected to fulfill the contractual prerequisites to arbitration when the Company fails to cooperate in processing the grievance. The Company cannot block access to arbitration simply by refusing to process grievances. Here, the Union made a good faith attempt to resolve Grievance 468 by resorting to the contractual procedures set forth in Article 47. As such, the Company is precluded from raising this objection, and the grievance is to be submitted to arbitration according to the procedures specified in Step 3 of Article 47.

## III. CONCLUSION

For the foregoing reasons, this Court hereby grants plaintiff's cross-motion for summary judgment and denies defendant's motion for summary judgment. Grievance 468 is to be submitted to arbitration according to the procedures set forth in Step 3 of Article 47.

IT IS SO ORDERED.