**UNITED PAPERWORKERS INTERNATIONAL UNION and its Local 340, Plaintiffs,**

v.

**BOISE CASCADE CORPORATION and Specialty Paperboard, Inc., Defendants.**

**Civ. A. No. 90–71.**

United States District Court,
D. Vermont.

Feb. 12, 1991.

John D. Shullenberger, Mickenberg, Dunn, Sirotkin & Dorsch, Burlington, Vt., for plaintiffs.

Joseph R. Weston, Paul, Frank & Collins, Burlington, Vt., and Sarah Kelly, Morgan, Lewis & Bokius, Philadelphia, Pa., for defendant Boise Cascade Corp.

Heather Briggs, Downs, Rachlin & Martin, Burlington, Vt., for defendant Specialty Paperboard, Inc.

## OPINION AND ORDER

PARKER, District Judge.

### I. INTRODUCTION

United Paperworkers International Union (hereinafter "UPI") initially filed a complaint asking this Court to order Boise Cascade (hereinafter "Boise") and Specialty Paperboard Inc. (hereinafter "SPI") to arbitrate a grievance filed by the Union. The grievance relates to the removal of a job classification from the collective bargaining agreement and certain layoffs. In an amended complaint, UPI added a second grievance, concerning seniority rights, against SPI only. Section 301 of the Labor Management Relations Act of 1947,[1] gives this Court jurisdiction and the power to order arbitration of a union grievance if the refusal to arbitrate is a violation of the collective bargaining agreement between the parties. SPI moved for summary judgment and sanctions against UPI on the first grievance. UPI opposed SPI's motion and filed a cross motion for summary judgment. Plaintiff and Boise Cascade have also each moved for summary judgments against each other on the first grievance. This Court grants summary judgment in favor of UPI on the first grievance and orders the parties to arbitrate this grievance. SPI's motion for sanctions is denied.

---

1. 29 U.S.C.A. § 185(a) (1978).

We grant summary judgment in favor of SPI with respect to the second grievance.

## II. FACTS

The material facts as to which there are no genuine issues in dispute are as follows. UPI has been the exclusive representative of the employees employed by Boise and SPI at the Missisquoi paper mill located at Sheldon Springs, Vermont for a number of years. The collective bargaining agreement between Boise and UPI at issue was effective from July 1, 1986 until June 30, 1989. That agreement was automatically renewed on June 30, 1989. Neither Boise nor UPI has ever terminated the agreement in accordance with its termination provisions. The agreement sets up a grievance procedure culminating in arbitration for "any employee or group of employees ... aggrieved concerning the interpretation or application of any provision of [the] Agreement to rates of pay, wages, hours of employment, or other conditions of employment...." Article XX of Agreement.

On May 24, 1989, in anticipation of Boise's sale of most of its assets to SPI, SPI and UPI entered into an agreement, wherein SPI agreed to assume the obligations under the collective bargaining agreement then in existence between UPI and Boise. The agreement in part stated:

When the transaction is completed, and if mutually acceptable to your Union, the new company, Specialty Paperboard, Inc., is prepared to assume the terms and conditions of each labor agreement currently in effect with Boise Cascade.... We also will recognize the full seniority of all employees as provided under these agreements.

On June 30, 1989, Boise sold and transferred title of certain assets to SPI, including the Missisquoi paper mill, but not including the Sheldon Springs hydroelectric facilities adjacent to the mill. SPI and UPI negotiated for an extension of the collective bargaining agreement and later for a new contract. When negotiations failed, SPI delivered to the Union a 10–day notice to terminate the collective bargaining agreement, pursuant to the termination provisions of the agreement. Termination was effective on October 3, 1989.

At the time of the sale there was a job known as racks-raking[2] at the Sheldon Springs hydroelectric facility which was being performed by four employees who were a part of the collective bargaining unit. From June 30, 1989 (the date of sale of the mill) until the end of September 1989, these four employees continued to perform the racks-raking job pursuant to an agreement between SPI and Boise whereby SPI supplied Boise with the employees. Boise reimbursed SPI for wages earned by SPI employees while rack-raking. On September 25, 1989, SPI laid off these four employees. Shortly thereafter (sometime in October 1989), Boise had the racks-raking job at the hydro facility performed by an independent contractor known as TAD. TAD rehired the four employees that SPI had laid off.

The first grievance arises from a September 13, 1989 memorandum that SPI distributed to its supervisors. The memorandum stated that with the sale of the mill, Boise continued to have responsibility for the racks as part of the hydro operation. The memorandum stated that the racks-raking jobs were "not a part of the mill any longer."[3]

Ron Ducolon, the President of UPI, read the memorandum on the bulletin board at the mill on September 15, 1989. Ducolon reacted by personally handing a grievance dated September 17 to Frank Sadowski, an SPI employee who was the mill human services manager. The grievance protested the removal of the racks-raking jobs from the bargaining unit. The grievance was submitted as a "class action" grievance, which Ducolon asserts should have

---

2. The racks-raking job is seasonal in nature and involves freeing the racks of leaves or ice so that water can flow into the mill and hydro generating system.

3. On October 28, 1988, an earlier arbitration award issued by David Bloodsworth held that Boise had violated the collective bargaining agreement with UPI by failing to post vacancies for the racks-raking job. This arbitration award indicated that the racks-raking job was covered by the bargaining agreement between UPI and Boise.

been handled at the third step of the grievance procedure under the contract. Sadowski told Ducolon that the grievance had nothing to do with SPI because the racks-rakers were not part of the mill and therefore the grievance was proper only against Boise.[4] SPI has never responded to the grievance.

On September 27, 1989, the Union filed a similar grievance with Boise. Boise also has refused to respond.

The grievances against SPI and Boise both allege that the employers have subcontracted the racks-raking work in a manner which permanently diminished the workforce. Article I of the collective bargaining agreement states that "[t]he company ... has the exclusive right to: ... (2) Engage independent contractors to perform work which will not result in permanently diminishing the workforce...." UPI further alleges that both defendants have breached the terms of the collective bargaining agreement by refusing to process the grievance in accordance with the grievance procedures in the agreement, and by refusing to arbitrate.

UPI's second grievance is brought only against SPI. In December 1989, SPI laid off employee Michael Morin, while retaining an employee who was junior in seniority. Morin filed a grievance on December 1, 1989. After going through the first three steps of the grievance procedure, SPI has refused to arbitrate the Morin grievance. UPI states that SPI's refusal to arbitrate Morin's grievance is a breach of the collective bargaining agreement.

### III. DISCUSSION

A. THE UPI GRIEVANCE AGAINST SPI CONCERNING LAYOFFS OF THE RACKS-RAKERS AND REMOVAL OF THESE JOBS FROM THE COLLECTIVE BARGAINING UNIT

 Plaintiff UPI requests this Court to compel both defendants to participate in arbitration of the disputes in issue pursuant to section 301 of the Labor Management Relations Act, as outlined above. This Court's role under section 301 is limited to determining whether SPI or Boise breached the collective bargaining agreement by refusing to arbitrate. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Arbitration is a creature of contract and the parties can only be required to arbitrate disputes which they agreed to submit to arbitration in a collective bargaining agreement. The law is settled that "where the parties have contracted to resolve their disputes by arbitration, a court asked to enforce that agreement should not weigh the merits of a claim that the agreement has been violated." *Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 96 (2d Cir.1986) (citing *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)). The Supreme Court has said that the function of the court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *American Mfg.*, 363 U.S. at 568, 80 S.Ct. at 1346. When interpreting an arbitration clause to determine if it covers the dispute, the Court should resolve doubts in favor of coverage. *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53.

The Second Circuit in *Emery Air Freight* set forth the framework for determining whether this Court should compel arbitration in a § 301 suit:

[A] court should first examine the scope of the arbitration clause to see if it is the broad one generally in use governing "all disputes" as to the meaning, application or compliance with the collective bargain-

---

4. SPI alleges that Sadowski took the grievance and forwarded it to Boise. Ducolon, on the other hand, claims that Sadowski refused to accept the grievance, and Ducolon still has the original. This discrepancy over the facts is not material for purposes of the summary judg-

ment. Under either version, it is clear that SPI refused to acknowledge, let alone respond to, a greivance filed against it. It appears that any further attempt by Ducolon to refile the grievance would have been futile.

ing agreement, or is a narrower version which may exclude particular subjects from arbitration. The court must then determine whether the Union has made a claim that "on its face is governed by the contract." If it has and if the arbitration clause is broad, then the court should order arbitration.

*Emery Air Freight*, 786 F.2d at 97 (citations omitted). The Union argues that under *Emery*, the grievance over the removal of the racks-raking classification is substantively arbitrable under the terms of the contract.

■ SPI's position is that there are two predicates to a section 301 action. First, a demand to arbitrate and, second, a refusal to arbitrate. SPI maintains that it has no duty to arbitrate because the Union failed to make a demand for arbitration according to the grievance procedures in the contract. The collective bargaining agreement places the burden on the Union to demand arbitration within a fixed period of time after the Company makes its decision at step three of the grievance procedure.

This Court agrees with the Union and holds that the Union's grievance filed against SPI concerning the layoffs of the racks-rakers and the removal of these jobs from the collective bargaining unit should be submitted to arbitration. We find the racks-raking grievance substantively arbitrable. The terms of the collective bargaining agreement provide for arbitration of grievances "concerning the interpretation or application of any provision of [the] Agreement to rates of pay, wages, hours of employment, or other conditions of employment...." Article XX of Agreement. A grievance concerning the removal of the racks-raking jobs from the bargaining unit relates to "conditions of employment" covered by the collective bargaining agreement. Therefore, the dispute is arbitrable.

SPI's position that regardless of whether the grievance is arbitrable under the contract, UPI is procedurally barred from arbitration lacks merit. SPI cannot use UPI's failure to comply with the steps of the grievance procedure as a defense for its refusal to arbitrate when it is actually de-

nying the applicability of the entire grievance procedure. SPI has refused to acknowledge UPI's grievance, claiming instead that the grievance should have been submitted to Boise. SPI's argument that UPI should have "demanded" arbitration within a fixed period of time after step three of the grievance procedure verges on the ludicrous when SPI has refused even to respond at the *first* step of the process. UPI cannot be expected to comply with the grievance procedures when doing so would be futile. *See Local 744, Int'l Bhd. of Teamsters v. Skokie Valley Beverage Co.*, 644 F.Supp. 213, 218 (N.D.Ill.1986) (employer precluded from raising as defense to arbitration Union's failure to fulfill contractual prerequisites to arbitration when employer "has refused from the outset to process" the grievance); *see also Glover v. St. Louis–San Francisco Railway Co.*, 393 U.S. 324, 329–30, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969) (employees not required to exhaust grievance procedure "where the effort to proceed formally with contractual or administrative remedies would be wholly futile").

■ In addition, the issue of whether UPI's failure to follow the grievance procedure barred arbitration is a question of "procedural arbitrability" that should be submitted to the arbitrator. In *John Wiley & Sons v. Livingston*, 376 U.S. 543, 556–57, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964), the Supreme Court held:

Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. In this case, for example, the Union argues that Wiley's consistent refusal to recognize the Union's representative status after the merger made it "utterly futile—and a little bit ridiculous to follow the grievance steps as set forth in the contract."

. . . .

Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the

dispute and bear on its final disposition should be left to the arbitrator.

In *Wiley,* the union had several grievances concerning conditions of employment that would have been arbitrable prior to a merger between Wiley and the employer who was party to the original collective bargaining agreement. The Supreme Court found that the question whether the union was procedurally barred from arbitration was intertwined with the underlying substantive issue, namely, the effect of the merger and whether the union and the employer contemplated the merger when they negotiated their contract. In the instant case, the UPI's grievances would certainly have been arbitrable between Boise and UPI prior to the sale of assets in much the same way as the grievances in *Wiley* would have been arbitrable prior to the merger. UPI's grievance raises the question which underlies the whole litigation: What is the effect of the sale of the mill and SPI's assumption of the collective bargaining agreement on the rights of covered employees?

 SPI makes two additional arguments in its reply and supplemental memoranda that this Court finds unpersuasive. First, SPI argues that the § 301(a) suit was untimely filed. The statute of limitations for § 301(a) suits is six months. *Associated Brick Mason Contractors v. Harrington,* 820 F.2d 31, 37 (2d Cir.1987). The statute of limitations began to run on the date which the affected party knew or should have known of the alleged contractual breach. *Santos v. District Council of New York of United Bhd. of Carpenters,* 619 F.2d 963, 969 (2d Cir.1980). SPI then argues that the statute of limitations began to run when the Union knew or should have known about the grievance. SPI is wrong. The alleged contractual breach here which begins the six-month period is not SPI's removal of the racks-raking jobs from the bargaining unit, but rather SPI's refusal to process the grievance or arbitrate. Since UPI handed the grievance to SPI on September 17, 1989, the complaint filed on March 16, 1990 is timely.

 SPI's last argument is equally unconvincing. SPI claims that the grievance does not concern the layoff of the racks-rakers at the hydroelectric facility. Rather, SPI recharacterizes the grievance to be one concerning representation over which an arbitrator has no authority. The National Labor Relations Board's decisions override the arbitrator on questions of representation. *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). Therefore, SPI submits that the Union should invoke the authority of the National Labor Relations Board to resolve the dispute. While SPI is correct in its position that the NLRB overrides arbitrators on questions of representation, SPI is trying to twist the holding in *Carey* to state a proposition for which it does not stand. *Carey* does not say that when a grievance may be characterized as one involving representation rather than a condition of employment, the Union must submit the dispute to the NLRB before going to an arbitrator. In fact, the holding in *Carey* is the complete opposite of SPI's contortion. The Supreme Court in *Carey* held that whether the dispute at issue was considered to be one involving work assignment or one concerning representation, the dispute was not within the exclusive jurisdiction of the NLRB, and submitting the dispute to arbitration was not barred. In fact, the Supreme Court encouraged resort to the arbitration procedure: "The superior authority of the Board may be invoked at any time. Meanwhile, the therapy of arbitration is brought to bear in a complicated and troubled area." *Id.* at 272, 84 S.Ct. at 409; SPI's Supplemental Memorandum, p. 2. It is true that at some point in time the arbitration award may end up in conflict with a Board ruling, but the Supreme Court found that this possibility of conflict was no barrier to arbitration. In fact, arbitration awards are treated with deference by the Board.

We therefore hold that UPI's grievance against SPI regarding the removal of the racks-rakers from the bargaining unit and the layoffs of the racks-rakers is subject to arbitration and accordingly grant summary judgment against SPI. We deny SPI's motion for sanctions.

## B. THE UPI GRIEVANCE AGAINST BOISE CONCERNING THE LAYOFFS OF THE RACKS–RAKERS

■ With regard to UPI's grievance against Boise concerning the layoffs of the racks-rakers, this Court grants UPI's motion for summary judgment and orders arbitration. UPI's position against Boise is the same as its position against SPI. Boise argues that the principle of novation is applicable—that is, when SPI assumed the terms and conditions of the collective bargaining agreement on May 24, 1989, Boise was discharged from its obligations. This Court finds neither an express nor an implied novation, and holds that Boise is still bound under the collective bargaining agreement.

Since there is no agreement between UPI and Boise that Boise would be discharged from its obligations under the contract, there is no express novation.

> To constitute a novation there must be a valid existing contract which is extinguished by mutual agreement between the original obligors and obligees and the new party. It is the *mutual* understanding that the stranger is accepted *in place* of the first obligor that discharges the original undertaking and transfers the obligation to the new participant.

*H.P. Hood & Sons v. Heins*, 124 Vt. 331, 340, 205 A.2d 561, 567 (1964) (emphasis added). In the instant case, the SPI–UPI agreement is an assignment of rights and a delegation of duties in the Boise–UPI agreement, but there is no language discharging Boise. A novation would require a mutual understanding between UPI, SPI and Boise that SPI's performance was substituted for Boise's and that Boise was no longer obligated under the terms of the agreement. Boise argues that the language "if mutually acceptable to your Union" in the agreement between SPI and UPI satisfies the mutual agreement between the parties required for a novation. Boise was not even a party to the SPI–UPI May 24, 1989 agreement and there is absolutely no language in that agreement suggesting that UPI accepted SPI's performance under the collective bargaining agreement as a substitute for Boise's performance.

■ Not only is there no explicit release of Boise in the SPI–UPI agreement, but also there is no implicit release of Boise. As evidence of an implicit release, Boise points to the fact that UPI has not sought to file the second grievance in this action against Boise, nor submitted any other grievances, nor sought to negotiate a successor contract with Boise. Boise's arguments sound in waiver or equitable estoppel. Waiver and estoppel are affirmative defenses that bear on the merits, and therefore are issues for the arbitrator. *Broadcast Arts Productions v. Screen Actors Guild*, 673 F.Supp. 701, 707 & n. 3 (S.D.N. Y.1987); *see also Inner City Broadcasting Corp. v. American Fed'n of Television and Radio Artists*, 586 F.Supp. 556, 560 (1984) (whether Union waived right to object to former officer's presence at bargaining table on behalf of employer was an issue to be raised at arbitration; if Union did waive any right, it waived the right to prevail on its claim, but it did not waive its right to have the waiver issue resolved in a forum that parties had agreed upon to resolve disputes); *NLRB v. Litton Financial Printing Div.*, 893 F.2d 1128, 1135 n. 6 (9th Cir.), *cert. granted*, —— U.S. ——, 111 S.Ct. 426, 112 L.Ed.2d 410 (1990) (fact that employer previously laid off employees without bargaining is insufficient to show waiver by inaction; Union's waiver of right to bargain over layoffs in the past does not mean Union waived right to bargain over this particular layoff).

Given that the collective bargaining agreement between Boise and UPI is the same as that between SPI and UPI, and this Court's determination that Boise has not been released from its obligations under the contract, we hold that UPI's grievance against Boise concerning the layoff of the racks-rakers is arbitrable. We grant summary judgment in favor of UPI on this grievance.

In light of our holding that the collective bargaining agreement between Boise and UPI was still in effect, Boise's argument

that it has no obligation to arbitrate a post-contract dispute is irrelevant.

## C. THE GRIEVANCE AGAINST SPI CONCERNING SENIORITY RIGHTS OF EMPLOYEE MORIN

■ Morin was laid off in December 1989, while SPI retained an employee who was junior in seniority to Morin. On October 3, 1989, prior to SPI's firing Morin, the collective bargaining agreement between SPI and UPI was terminated. Hence, this Court must determine whether a post-contract grievance concerning seniority rights is arbitrable.

UPI relies on the Supreme Court's decision in *Nolde Bros., Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1976). In *Nolde,* the union terminated the contract and four days later the employer permanently closed the bakery and discharged all the employees. The employer rejected the union's demand for severance pay under the expired agreement and refused to arbitrate the dispute. The Supreme Court compelled arbitration holding that "the parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement." *Nolde,* 430 U.S. at 252, 97 S.Ct. at 1072. *See also Emery Air Freight,* 786 F.2d at 97–98; *Butchers, Food Handlers and Allied Workers Union, Local 174 v. Hebrew Nat'l Kosher Foods, Inc.,* 818 F.2d 283, 287–88 (2d Cir. 1987). The Supreme Court held that "in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Nolde,* 430 U.S. at 253, 97 S.Ct. at 1073. For the grievance to be arbitrable after the contract has expired, however, the grievance must "arise" under the contract. *Id.* at 249, 97 S.Ct. at 1071. The Court in *Nolde* found that severance pay-

ments were in the nature of "accrued" or "vested" rights, which had been earned by the employees during the term of the contract, even though they became payable after termination. *Id.* at 248–49, 97 S.Ct. at 1070–71. UPI then cites *NLRB v. Litton* for the proposition that seniority rights "arise" under the collective bargaining agreement and that the duty to arbitrate the grievance survives contract termination. The Ninth Circuit held that an employer has a duty under *Nolde* for purposes of section 301 actions "to arbitrate a post-expiration grievance ... [if] it involves contract rights 'capable of accruing or vesting to some degree during the life of the contract and ripening or remaining enforceable after the contract expires.'" 893 F.2d at 1137 (quoting *Indiana & Michigan,* 1986–87 NLRB Dec. (CCH) at ¶ 32,054). Seniority protection against layoff was such a right. SPI's position is simply that Second Circuit law holds that seniority rights do not survive contract termination and the Ninth Circuit is the only Circuit that holds otherwise.

This Court holds, under the authority of *Local 1251, Int'l Union of United Automobile Workers of Am. v. Robertshaw Controls Co.,* 405 F.2d 29 (2d Cir.1968) (en banc), that seniority rights did not survive contract termination and we therefore grant SPI's summary judgment motion on this particular grievance. The Second Circuit in *Robertshaw* said that:

> the basic proposition ... that seniority is a vested right, finds no support in authority, in logic or in the socio-economic setting of labor-management relations. Seniority is wholly a creation of the collective agreement and does not exist apart from that agreement.

405 F.2d at 33. The Fourth, Fifth, Sixth, Tenth Circuits and the District of Columbia are in accord with the Second Circuit's position in *Robertshaw.*[5]

---

**5.** *Ekas v. Carling Nat'l Breweries, Inc.,* 602 F.2d 664, 666–67 & n. 3 (4th Cir.1979), *cert. denied,* 444 U.S. 1017, 100 S.Ct. 669, 62 L.Ed.2d 646 (1980); *Cooper v. General Motors Corp.,* 651 F.2d 249, 250–51 (5th Cir.1981); *Charland v. Norge Div., Borg–Warner Corp.,* 407 F.2d 1062,

1064 (6th Cir.), *cert. denied,* 395 U.S. 927, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); *United Food & Commercial Workers Int'l Union, Local 7 v. Gold Star Sausage Co.,* 897 F.2d 1022, 1026 (10th Cir.1990); *Baker v. Newspaper and Graphic*

## IV. CONCLUSION

The Court hereby orders that summary judgment on the grievance concerning the layoffs of the racks-rakers is GRANTED in favor of UPI. SPI's motion for sanctions is DENIED. Pursuant to section 301 of the Labor Management Relations Act, this Court orders SPI and Boise to arbitrate with UPI the dispute over the layoffs of the racks-rakers. Summary judgment on the grievance concerning seniority rights of Morin is GRANTED in favor of SPI.

*Communications Union,* 628 F.2d 156, 159–60 (D.C.Cir.1980).